# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60211

IVAN BERNABE RODRIGUEZ VAZQUEZ,

      Petitioner,

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

      Respondent.

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2018

Lyle W. Cayce
Clerk

Petition for Review of an Order of the
Board of Immigration Appeals

Before JONES, SMITH, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Ivan Bernabe Rodriguez Vazquez ("Vazquez") appeals the Board of Immigration Appeals's ("BIA") decision that he was eligible for deportation pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) for possessing a controlled substance in violation of Oklahoma law. Vazquez challenges both the determination that the Oklahoma schedule of controlled substances was a categorical match to the federal schedule and that in order to terminate his order of removal he was required to show a "realistic probability" that Oklahoma actually prosecutes cases involving substances not included in the federal schedules.

The Fifth Circuit has held that the realistic probability test applies whenever the categorical approach is employed. *See United States v. Castillo-*

No. 16-60211

*Rivera*, 853 F.3d 218 (5th Cir. 2017) (en banc), *cert. denied*, No. 17-5054, 2017 WL 2855255 (Dec. 4, 2017). Given that the state statute is facially broader than its federal analog, *Castillo-Rivera* suggests that Vazquez can prevail only if the realistic probability test is satisfied. But he fails to address the question in his brief on appeal, thus waiving the only argument available to him in the wake of *Catillo-Rivera*. Accordingly, we DENY the petition for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Vazquez, a native and citizen of Mexico, was admitted to the United States as a lawful permanent resident around October 12, 2007. On August 28, 2013, Vazquez was convicted in Oklahoma for possession of a controlled and dangerous substance, cocaine, in violation of Oklahoma Statute Annotated title 63, § 2-402(A)(1) (2013). Vazquez pleaded guilty and was sentenced to a deferred term of imprisonment of three years, to serve 30 days, followed by 24 months of supervised probation. On July 23, 2015, the U.S. Department of Homeland Security ("DHS") issued Vazquez a Notice to Appear, charging that he was subject to removal pursuant to § 237(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(B)(i), because he was convicted of a controlled substance violation.

Vazquez denied the factual allegations pertaining to his conviction, noting that the judgment was deferred and, under Oklahoma law, the conviction would be automatically expunged upon his satisfactory completion of the probation term. He also sought, and received, several continuances while he collaterally attacked his conviction in state court. The Immigration Judge ("IJ") found by clear and convincing evidence that Vazquez was convicted of cocaine possession based on documentary evidence submitted by the DHS. The documentary evidence provided that Vazquez pleaded guilty in 2013 to "possession of controlled dangerous substance - cocaine." The IJ concluded that

No. 16-60211

Vazquez's conviction was valid for immigration purposes, and he was removable as charged.

Vazquez appealed the IJ's decision to the BIA. He argued, inter alia, that the IJ failed to conduct a categorical analysis of the statute of conviction, the statute was not divisible, and violating Oklahoma's controlled substances statute did not equate to violating the federal Controlled Substances Act because the Oklahoma and federal schedules did not categorically match. The BIA dismissed the appeal, concluding that Vazquez was removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) because his conviction for possession of a controlled and dangerous substance in violation of Oklahoma state law was a categorical match to the corresponding federal offense. Specifically, the BIA noted that it "fail[ed] to find any of the alleged differences cited by [Vazquez] on appeal" after conducting a de novo comparison of controlled substances listed in Oklahoma's Schedule II, Part B with the substances included in Schedule II of the federal drug schedules. The BIA noted that even if Oklahoma's drug schedules included substances that were not included in the federal drug schedules,

> there must be a realistic probability that the State would prosecute conduct under the statute that falls outside the generic definition of the removable offense to defeat a charge of removability under the categorical approach. In other words . . . we presume there is a categorical match between state and federal drug schedules unless the respondent shows that the state actually prosecutes cases involving substances not on the federal schedule.

Vazquez filed a timely petition for review.

## II. DISCUSSION

The removal proceedings and the direct appeal to the BIA were conducted within this Circuit. *See* 8 U.S.C. § 1252(b)(2). Judicial review of a final order by the BIA against a criminal alien is generally precluded by the Immigration & Nationality Act, 8 U.S.C. § 1252(a)(2)(C). *See Enriquez–*

No. 16-60211

*Gutierrez v. Holder*, 612 F.3d 400, 406 (5th Cir. 2010). However, this Court retains jurisdiction to review constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D). The BIA's determination that a violation of a state or federal criminal law relates to a controlled substance violation presents a pure question of law. *See id.* § 1227(a)(2)(B)(i); *Danso v. Gonzales*, 489 F.3d 709, 712–13 (5th Cir. 2007) (holding that this Court had jurisdiction to review whether a conviction qualified as a controlled substance violation pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II)); *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002) (noting that determining a crime's elements is beyond the scope of the BIA's power and expertise).

## A.    Effective Exhaustion of Vazquez's Claim

As a preliminary issue, this Court must determine whether Vazquez properly exhausted his claim before the BIA. We have jurisdiction to determine our own jurisdiction. *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009). Judicial review of a final removal order is only available if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The exhaustion requirement is statutorily mandated; "an alien's failure to exhaust his administrative remedies serves as a jurisdictional bar to our consideration of the issue." *Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001). "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the [BIA]." *Id.* at 452–53. "This exhaustion requirement applies to all issues for which an administrative remedy is available to a petitioner 'as of right.'" *Omari*, 562 F.3d at 318 (quoting *Arce–Vences v. Mukasey*, 512 F.3d 167, 172 (5th Cir. 2007)). "A remedy is available as of right if (1) the petitioner could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such a claim." *Id.* at 318–19. The alien "must fairly present an issue to the BIA to satisfy § 1252(d)'s exhaustion requirement." *Id.* at 321

4

(internal quotation marks omitted). An issue is fairly presented when the petitioner made "some concrete statement before the BIA to which they could reasonably tie their claims before this court." *Id.* at 322. If an alien submits a brief, "that brief becomes the operative document through which any issues that a petitioner wishes to have considered must be raised." *Claudio v. Holder*, 601 F.3d 316, 319 (5th Cir. 2010).

In order to satisfy the exhaustion requirement, Fifth Circuit cases "have continually stated that a petitioner must 'raise,' 'present,' or 'mention' an issue to the BIA to satisfy exhaustion." *Omari*, 562 F.3d at 321. This requires some affirmative action by a party, but it is by no means a requirement that the arguments be identical. *See id.* For example, in *Carranza–de Salinas v. Gonzalez*, 477 F.3d 200 (5th Cir. 2007), the petitioner exhausted his argument by presenting it in a "less developed form." *Id.* at 206–07. In *Dale v. Holder*, a petitioner properly exhausted an argument regarding divisibility of a statute even though the argument before the BIA was not identical to the argument presented on appeal. 610 F.3d 294, 299–301 (5th Cir. 2010). This Court held that subsequent variations in analysis or changes in the scope of an argument do not render an issue unexhausted. *Id.* Similarly, in *Burke v. Mukasey*, a pro se petitioner's general argument to the BIA embraced a slightly more specific question, and thus his claim on appeal was exhausted. 509 F.3d 695, 696 (5th Cir. 2007). The key requirement in these cases is that a petitioner must have presented an issue in some concrete way in order to put the BIA on notice of his claim. *See Omari*, 562 F.3d at 322 (framing the exhaustion requirement in broad terms of identifying issues). In this case, Vazquez exhausted his argument that the Oklahoma statute is broader than its federal counterpart.

Vazquez asserts that he properly raised all issues before the BIA. Specifically, he exhausted the issue of whether or not the Oklahoma controlled substance schedules included more substances than the federal schedules such

No. 16-60211

that they were not a generic match. Thus, a controlled substance offense under Oklahoma law could not categorically be an offense related to a controlled substance as required by 8 U.S.C. § 1227(a)(2)(B)(i). Not only did Vazquez provide a concrete statement in his brief to which he could tie his claim on appeal, but Vazquez explicitly argued the exact claim he makes before this Court: "[a] review of the Oklahoma statute of conviction . . . reveals that the Oklahoma schedules contain substances that are not contained in any of the five federal schedules." In support of his claim, Vazquez argued that his conviction was not categorically related to a federally controlled substance because Oklahoma's drug schedules, specifically subsection B of Schedule II, included 20 substances not included in the federal drug schedules.[1] Because Vazquez argued that Oklahoma's drug schedules included substances that were not included in any of the federal drug schedules, we conclude that he exhausted the issue and we therefore have jurisdiction to hear his claim.

On appeal, Vazquez relies on three other substances that he claims are not included in any federal schedule: Salvia Divinorum, Salvinorin A, and Cyclohexamine.[2] Salvia Divinorum and Salvinorin A are not federally controlled substances. *Compare* Okla. Stats. Ann. tit. 63, §§ 2-204, 2-206, *with* 21 C.F.R. §§ 1308.11–15; *see also* Drug Enforcement Administration, Office of Diversion Control, Drug & Chemical Evaluation Section, *Salvia Divinorum and            Salvinorin            A*            (Oct.            2013),

---

[1] Although Vazquez pointed to these substances to show a difference between the Oklahoma and federal drug schedules, 19 of the substances he identified were in fact included in the federal drug schedules. And while methylphenidate was not included in the federal drug schedules, *see* 21 C.F.R. § 1308.12 (2013), it was not added to Oklahoma's drug schedules until November 1, 2014, *see* 2014 Okla. Sess. Law Serv. Ch. 154, § 3, after Vazquez's conviction. The BIA's determination that the differences cited by Vazquez were not present was therefore not erroneous.

[2] Contrary to Vazquez's contention, Cyclohexamine was included in the federal drug schedules. *See* 21 C.F.R. § 1308.11(d)(32) (2013).

No. 16-60211

http://www.deadiversion.usdoj.gov/drug_chem_info/salvia_d.pdf.      Although

Vazquez did not reference these specific substances in his brief to the BIA, we

find that he exhausted his overbreadth argument. While Vazquez may have

cited different *examples*, the *issue* he identified was that the Oklahoma

schedules were not a categorical match to federal schedules. Vazquez explicitly

told the BIA as much in his brief. Because Vazquez's criminal penalty applies

to any Schedule I or II substance, it is necessary to compare the Oklahoma and

federal Schedules I and II to determine the acts criminalized under the

categorical approach. Vazquez's broader argument was thus sufficient to fairly

present the issue before the BIA. *See Omari*, 562 F.3d at 322 (recognizing that

the exhaustion requirement was met where the "petitioners made some

concrete statement before the BIA to which they could reasonably tie their

claims"). His argument thus "embraces" the more narrow issue of comparing

Oklahoma's controlled substance schedules.

Even if he did not exhaust his specific claim regarding the three

substances not included in the federal schedules, we nevertheless have

jurisdiction over Vazquez's claim. On appeal, Vazquez argues that the BIA

improperly employed the categorical approach by limiting its review to

Schedule II rather than including Schedule I in its comparison. This is a

question of law, and this Court retains jurisdiction to review questions of law.

8 U.S.C. § 1252(a)(2)(D); *see also Danso*, 489 F.3d at 712–13. Similarly, where

the BIA chooses to address an issue on its merits—here whether the Oklahoma

statute was a categorical match to the federal analog—the issue is considered

exhausted. *See Lopez–Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010)

(citing *Sidabutar v. Gonzalez*, 503 F.3d 1116, 1122 (10th Cir. 2007)). Either

way, we may hear Vazquez's claim that he presents on appeal.

This is not the case where efficient adjudication is at issue, and Vazquez

is not asking us to require the BIA to "divine from the record all potentially-

disputed issues." *Omari*, 562 F.3d at 322. By making the argument that (1) the Oklahoma statute of conviction was not a categorical match, and (2) the Oklahoma schedules had at least one substance not on the federal schedules, Vazquez fairly identified the issue, notified the BIA of the appropriate standard, and the BIA addressed the merits of his claim. Thus, we may hear the claim Vazquez now makes on appeal—both that the BIA erred in employing the categorical approach and that the Oklahoma statute is not a categorical match to the federal statute.

## B.    The BIA Decision

Vazquez challenges the BIA's conclusion that he was eligible for removal based on his Oklahoma conviction. When reviewing a BIA decision, questions of law are reviewed de novo, but this Court defers to the BIA's interpretation of immigration statutes and regulations. *Danso*, 489 F.3d at 712–13. Review of BIA decisions is confined to the BIA's analysis and reasoning; this Court "may usually only affirm the BIA on the basis of its stated rationale." *Enriquez–Gutierrez*, 612 F.3d at 407; *see also Rodriguez–Barajas v. Holder*, 624 F.3d 678, 679 (5th Cir. 2010). This Court reviews the BIA's decision and the decision of the IJ to the extent that it influenced the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593–94 (5th Cir. 2007).

Vazquez was convicted under Oklahoma Statute Annotated title 63, § 2-402(A)(1) (2013), which at the time of his conviction provided:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled dangerous substance unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his or her professional practice, or except as otherwise authorized by this act.

The term "controlled dangerous substance" was defined as "a drug, substance or immediate precursor in Schedules I through V of the Uniform Controlled Dangerous Substances Act, Section 2-101 et seq. of this title." Okla. Stat. Ann.

tit. 63, § 2-101(8) (2013). A person violating the controlled dangerous substance law for any "Schedule I or II substance, except marihuana or a substance included in subsection D of Section 2-206 of this title, is guilty of a felony punishable by imprisonment for not less than two (2) years nor more than ten (10) years and by a fine not exceeding Five Thousand Dollars ($5,000.00)." *Id.* § 2-402(B)(1). Oklahoma provides different penalties for Schedule III, IV, and V controlled substances. *See id.* §§ 2-402(B)(2)–(4).

An alien who, after admission to the United States, is convicted of violating any state, federal, or foreign law "relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i). "[T]o trigger removal under § 1227(a)(2)(B)(i), the Government must connect an element of the alien's conviction to a drug 'defined in [21 U.S.C. § 802].'" *Mellouli v. Lynch*, 135 S. Ct. 1980, 1991 (2015). Section 802 defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6).[3] Cocaine was classified as a Schedule II controlled substance under both Oklahoma and federal law. *See* 21 C.F.R. § 1308.12(b)(4) (2013); Okla. Stat. Ann. tit. 63, § 2-206(A)(4) (2013).

But Vazquez is not eligible for removal merely because cocaine is a controlled substance under both federal and Oklahoma law. In order to determine whether a state law conviction renders an alien eligible for removal under 8 U.S.C. § 1227(a)(2)(B)(i), courts apply the "categorical approach." *See Mathis v. United* States, 136 S. Ct. 2243, 2248 (2016). The categorical approach analyzes whether the elements of the state conviction are the same as or

---

[3] The initial schedules were codified in 21 U.S.C. § 812, but the updated schedules are now codified in 21 C.F.R. § 1308, *et seq.*

narrower than the elements of the generic removability offense under federal law, while ignoring the particular facts of the case. *See id.* A state offense is a categorical match with a generic federal offense only if a conviction of the state offense would necessarily involve proving facts that would establish a violation of the generic federal offense. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). When comparing statutes under the categorical approach, courts only look to the statutory definitions; "[a]n alien's actual conduct is irrelevant to the inquiry." *Mellouli*, 135 S. Ct. at 1986. A court thus "must presume that the conviction rested upon nothing more than the least of the acts criminalized" and determine whether those acts correspond to the generic federal offense referenced in the removal statute. *Moncrieffe*, 569 U.S. at 190–91 (internal quotation marks, brackets, and citation omitted). This "requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007). To show a realistic probability, the alien must demonstrate "that the State actually prosecutes" the non-generic offense. *Moncrieffe*, 569 U.S. at 206.

### 1. Categorical Match Between the Oklahoma and Federal Schedules

Vazquez argues that BIA's conclusion that the Oklahoma statute categorically matched the federal statute was erroneous because the BIA improperly applied the categorical approach. Where a state statute criminalizes offenses that fall outside of the federal generic definition, there is not a categorical match. *See Moncrieffe*, 569 U.S. at 190, 206. In that case, the noncitizen would not be eligible for mandatory removal. *Id.* at 204. If there is a categorical match between the predicate offense and generic definition, the inquiry ends there. *Esparza–Rodriguez v. Holder*, 699 F.3d 821, 825 (5th Cir.

No. 16-60211

2012). Where there is a categorical match, a conviction under the state statute "triggers removal under the immigration statute." *Mellouli*, 135 S. Ct. at 1987.

The BIA failed to find any differences between "the controlled substances listed in Oklahoma's Schedule II, Part B" and "the controlled substances listed in Schedule II of the Federal controlled substances," and it concluded that Oklahoma's statute categorically matched its federal counterpart. The BIA erred in this conclusion. The breadth of the Oklahoma schedules facially extends beyond those substances that are controlled under federal law. Specifically, the Oklahoma schedules contain at least two substances (Salvia Divinorum and Salvinorin A) that are not included in any federal schedule. *Compare* Okla. Stats. Ann. tit. 63, §§ 2-204, 2-206, *with* 21 C.F.R. §§ 1308.11– 15. As a result, Okla. Stat. Ann. tit. 63, § 2-402(A)(1) (2013) applied more broadly than the federal offense under 8 U.S.C. § 1227. In fact, both parties agree that the Oklahoma statute of conviction here is broader than its federal analog.

The Government argues that while there are differences between the Oklahoma and federal schedules, this Court may still find a categorical match under the modified categorical approach. Thus, according to the Government, this Court may affirm the BIA's decision because the Oklahoma statute is divisible. Where a statute of conviction is divisible, by listing elements in the alternative, a court may apply the modified categorical approach. *Mathis*, 136 S. Ct. at 2249; *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). The modified categorical approach applies to "state statutes that contain several different crimes, each described separately." *Moncrieffe*, 569 U.S. at 191. And the modified categorical approach "permits a court to determine which statutory phrase was the basis for conviction." *Descamps*, 133 S. Ct. at 2285 (quoting *Johnson v. United States*, 559 U.S. 133, 144 (2010)). In these cases, "a court may determine which particular offense the noncitizen was convicted of

11

by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea." *Moncrieffe*, 569 U.S. at 191 (citation and internal quotation marks omitted). Specifically, the Government argues that the statute is divisible because the specific controlled substance is an element of the Oklahoma statute of conviction.

Employing the modified approach in this case, however, would extend beyond the proper scope of this Court's review. Review of BIA decisions is confined to the BIA's analysis and reasoning; this Court may "usually only affirm the BIA on the basis of its stated rationale for ordering an alien removed from the United States." *Enriquez–Gutierrez*, 612 F.3d at 407 (citing *Kwon v. INS*, 646 F.2d 909, 916 (5th Cir. 1981)); *see also Esquivel v. Lynch*, 803 F.3d 699, 701 n.1 (5th Cir. 2015). Affirmance would be appropriate only in cases of harmless error, "where there is no realistic possibility that, absent the errors, the . . . BIA would have reached a different conclusion." *Enriquez–Gutierrez*, 612 F.3d at 407 (internal quotation marks and citation omitted). But Vazquez contested the issue of whether the modified approach was proper in his case. He argued on appeal to the BIA that "his Oklahoma statute of conviction is not divisible but overbroad, such that the modified categorical approach may not be applied to his record of conviction to identify the controlled substance involved here as Cocaine." But the BIA did not decide this issue, nor did it appear to apply the modified categorical approach. Although the Government thoroughly briefs this issue, this panel may not affirm on this basis because it was not the BIA's stated rationale. We thus decline to assess whether the Oklahoma statute is divisible, or whether the modified categorical approach applies.

In limiting its review to Schedule II, rather than reviewing Schedules I and II under Oklahoma and federal law, the BIA erred in its application of the

categorical approach. The categorical approach required comparing the Oklahoma statute to its federal analog. In this case, because the Oklahoma statute criminalized controlled substances on Schedule I and II, the BIA should have compared both Schedules I and II. We find that the Oklahoma Statute Annotated title 63, § 2-402(A)(1) (2013) is facially overbroad under the categorical approach: Oklahoma schedules contain at least two substances (Salvia Divinorum and Salvinorin A) that are not included in any federal schedule. However, our inquiry does not end there.

### 2. *The Realistic Probability Test*

The controversy in this case centers on the applicability of the "realistic probability test" developed in *Gonzales v. Duenas–Alvarez*, 549 U.S. 183 (2007). The "realistic probability test" qualifies the categorical approach. *Moncrieffe*, 133 S. Ct. at 1684–85. In order to show that the state statute is broader than the generic definition of a crime, there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition." *Duenas–Alvarez*, 549 U.S. at 193. The alien must "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.*

Although the BIA concluded that the Oklahoma conviction was facially a categorical match, the BIA further reasoned, relying on the BIA case *Matter of Ferreira*, 26 I. & N. Dec. 415 (BIA 2014), that a categorical match was presumed unless Oklahoma "actually prosecutes cases involving substances not on the federal schedule." In *Matter of Ferreira*, an alien pleaded guilty to the sale of unspecified illegal narcotics in violation of Connecticut law, and the DHS charged him with removability. 26 I. & N. Dec. at 415–16. The alien argued that he was not eligible for removal because the Connecticut drug schedules included two opiate derivatives not included in any federal schedule. *Id.* at 416–17. The BIA noted that because the federal drug schedules "change

frequently, they often do not match State lists of controlled substances, which are found in statutes and regulations that are amended with varying frequency." *Id.* at 418. Thus, "the application of the realistic probability test is necessary to prevent the categorical approach from eliminating the immigration consequences for many State drug offenses, including trafficking crimes." *Id.* at 421. The BIA held that:

> [W]here a State statute on its face covers a controlled substance not included in the Federal controlled substances schedules, there must be a realistic probability that the State would prosecute conduct under the statute that falls outside the generic definition of the removable offense to defeat a charge of removability under the categorical approach.

*Id.* at 415.

Vazquez argues that applying the realistic probability test in this manner ignores "the very language of [the] statute" and places an unfair burden on aliens by requiring that they "provide additional corroboration to show that a state actually enforces [its] black-letter law." The Government contends that the realistic probability test requires Vazquez to demonstrate that Oklahoma actually prosecutes individuals for non-federally controlled substances, which Vazquez failed to do.

The application of the realistic probability test is largely unsettled. Neither the Supreme Court nor this Circuit have extended the realistic probability test to immigration cases involving controlled substances. *See, e.g.*, *Mellouli*, 135 S. Ct. at 1988 (finding that a drug-paraphernalia conviction did not render an alien deportable because his conviction was not limited to substances controlled under federal law). Other circuits have held that a statute's plain meaning is dispositive; where a state statute is facially overbroad compared to a corresponding federal statute, there is a realistic

probability that the state will apply its statute to conduct that falls outside the generic definition.[4]

However, this Court sitting en banc recently determined that "without supporting state case law, interpreting a state statute's text alone is simply not enough to establish the necessary 'realistic probability.'" *Castillo-Rivera*, 853 F.3d at 223 (citing *Duenas–Alvarez*, 549 U.S. at 193). In *Castillo-Rivera*, the court considered and rejected the argument that a Texas statute was not an aggravated felony under the Sentencing Guidelines because Texas's offense was broader than its federal counterpart. *Id.* at 224–25. The rule adopted in *Castillo-Rivera* is clear in its breadth: "a defendant must point to an actual state case applying a state statute in a nongeneric manner, even where the state statute may be plausibly interpreted as broader on its face." *Id.* at 224 n.4. *Castillo-Rivera* thus extends to the circumstances of this case, and we are bound by that decision.

*Castillo-Rivera* leaves just one path for Vazquez, which his brief fails entirely to pursue on appeal. Having never suggested that the realistic probability test is satisfied here, Vazquez has waived the only viable argument.

## III. CONCLUSION

For the foregoing reasons, the petition for review is DENIED.

---

[4] *See, e.g.*, *Swaby v. Yates*, 847 F.3d 62, 65–66 (1st Cir. 2017) (rejecting the realistic probability test for a controlled substance violation in the immigration context); *Vassell v. U.S. Att'y Gen.*, 839 F.3d 1352, 1362 (11th Cir. 2016); *Singh v. U.S. Att'y Gen.*, 839 F.3d 273, 286 (3d Cir. 2016); *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1071–72 (11th Cir. 2013); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007); *Mendieta–Robles v. Gonzales*, 226 F. App'x 564, 572 (6th Cir. 2007). Under this approach, the fact that Oklahoma plainly criminalizes a substance suggests a realistic probability of prosecution that does not exist at the federal level.