# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2020

Lyle W. Cayce
Clerk

No. 18-60449

IVAN ALEXANDROVICH VETCHER,

Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Petitioner Ivan Vetcher ("Vetcher") contests his detention and removal pursuant to Section 241 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1231) and Section 202 of the Controlled Substances Act (21 U.S.C. § 812). He seeks review of the May 11, 2018 decision of the Board of Immigration Appeals ("BIA") that affirmed the Immigration Judge's ("IJ") decision ordering his removal from the United States. For the reasons set forth herein, we DENY Vetcher's petition for cancellation of removal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

Vetcher is a 29 year-old native of Belarus whose family fled to the United States in 2001 as refugees; he was 11 years old at the time. He became a lawful

No. 18-60449

resident in 2005 at the age of 15. He is married to an American citizen with whom he shares a 5 year-old son and two step-children from his wife's previous relationship. In 2009, 2011, and 2012, Vetcher was arrested on charges including burglary, obstruction of justice, and obstructing police. In April 2014, Vetcher was arrested for selling psychedelic/hallucinogenic mushrooms. Vetcher pled guilty to two counts of "deliver[ing], by actual transfer, constructive transfer and offer to sell to another, a controlled substance, namely, psilocybin/psilocin, in an amount of four grams or more but less than 400 grams," pursuant to Texas Health & Safety Code § 481.113(d). In May 2014, Vetcher was sentenced to ten years of imprisonment on each count to run concurrently, though each sentence was fully suspended in favor of a ten-year period of community supervision.

On July 2, 2014, the Department of Homeland Security ("DHS") personally served Vetcher with a notice to appear ("NTA"). It notified Vetcher of his removability based upon the April 2014 drug trafficking conviction and ordered him to appear at removal proceedings before an IJ in Dallas, Texas, on a "date and time to be set." Vetcher was detained pending his removal proceedings, and the NTA was filed with the immigration court on July 8, 2014. On July 10, 2014, the immigration court issued Vetcher a "notice of hearing" scheduling his initial hearing before the IJ for July 17, 2014 at 8:30 a.m.

## B. Procedural History

The DHS charged Vetcher with deportability as an alien charged with an "aggravated felony." In its August 6, 2014 decision, the IJ sustained the aggravated felony charge and found Vetcher ineligible for asylum and withholding of removal on the basis that the aggravated felony charge was a "particularly serious crime." Filing pro se, Vetcher appealed that decision to the BIA. The BIA dismissed the appeal in December 2014, holding that the aggravated felony drug charge was indeed a particularly serious crime which

2

prevented Vetcher from seeking asylum and withholding of removal. Still proceeding pro se, Vetcher then sought relief from this court when he filed a petition for stay of removal pending review in January 2015. A couple of months later in March 2015, Vetcher filed a motion to re-open his case with the BIA.

On April 9, 2015, this court granted Vetcher's petition to stay the removal pending review, holding that "a Texas conviction for delivery of a controlled substance by offering to sell is not categorically an 'aggravated felony,' as defined by the INA because it penalizes conduct that does not amount to a felony under the Controlled Substances Act." *Vetcher v. Holder*, No. 15-60047, Slip Op. (5th Cir. Apr. 9, 2015). On June 25, 2015, the BIA sua sponte re-opened and remanded the proceedings back to the IJ for re-consideration of Vetcher's status as an alien convicted of an aggravated felony. After the proceedings were remanded, the government withdrew the aggravated felony charge and asserted a different basis for removal—Section 237(a)(2)(B)(i) of the INA—which provides in relevant part that "[a]ny alien who . . . has been convicted of a violation of . . . any law . . . of a State . . . relating to a controlled substance (as defined in Section 802 of Title 21) . . . is deportable." 8 U.S.C. § 1227(a)(2)(B)(i).

In its October 27, 2015 decision on remand, the IJ denied Vetcher's petition for withholding of removal and cancellation of removal because, after balancing the equities, it found that Vetcher's admitted drug trafficking and no signs of "real rehabilitation" from that conduct outweighed the fact that he was remorseful for his drug trafficking and that he has family in the United States. Vetcher appealed this decision to the BIA again, as a pro se litigant.

In its November 8, 2016 decision, the BIA affirmed in part the IJ's findings that Vetcher's 2014 conviction under Texas Health & Safety Code § 481.113(d) constitutes both a controlled substance violation, rendering Vetcher

removable, and a particularly serious crime, rendering him ineligible for withholding of removal under the INA. However, the BIA remanded the IJ's denial of Vetcher's petition for cancellation of removal stating that the IJ's decision "was not supported by complete factual findings." On October 4, 2017, the IJ denied Vetcher's application for discretionary cancellation of removal finding, *inter alia,* that Vetcher's claim that he had rehabilitated and turned away from drug sales was "severely undercut by [Vetcher's] continuing argument that he is not guilty of any crime." On appeal, the BIA restated and declined to revisit these conclusions in its May 11, 2018 decision while affirming the IJ's October 4, 2017 decision to deny Vetcher's petition for cancellation of removal from the United States. Vetcher timely appealed to this court, requesting that the court re-open his removal proceedings and allow him to re-litigate his claims with the adequate legal resources.

## II.    STANDARD OF REVIEW

"When reviewing a BIA decision, questions of law are reviewed de novo, but this Court defers to the BIA's interpretation of immigration statutes and regulations." *Vazquez v. Sessions*, 885 F.3d 862, 870 (5th Cir. 2018) (citing *Danso v. Gonzales*, 489 F.3d 709, 712–13 (5th Cir. 2007)); *cf. Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009) ("[T]his court accords deference to the BIA's interpretation of immigration statutes unless the record reveals compelling evidence that the BIA's interpretation is incorrect."). Though our review is generally limited to the BIA's decision, we may also review the IJ's decision when it influences the BIA's decision or where the BIA has adopted all or part of the IJ's reasoning. *Le v. Lynch,* 819 F.3d 98, 104 (5th Cir. 2016).

No. 18-60449

## III.   DISCUSSION

**A. Though Vetcher's state law conviction is not a facial categorical match to the federal schedule of controlled substances, there is no realistic probability that Texas courts will apply its statute to conduct that falls outside of the scope of the federal analog.**

Vetcher argues that his state law conviction is not a categorical match to the federal schedule of controlled substances because there are at least 43 substances in Penalty Group 2-A that were not on any federal schedule at the time of his conviction. To determine if a state law conviction renders an alien eligible for removal under the INA, courts apply the categorical approach. *Vazquez*, 885 F.3d at 870. As explained in *Vazquez*:

> The categorical approach analyzes whether the elements of the state conviction are the same as or narrower than the elements of the generic removability offense under federal law, while ignoring the particular facts of the case. A state offense is a categorical match with a generic federal offense only if a conviction of the state offense would necessarily involve proving facts that would establish a violation of the generic federal offense. *See Moncrieffe v. Holder*, 569 U.S. 184, 190, 133 S. Ct. 1678, 185 L.Ed.2d 727 (2013). When comparing statutes under the categorical approach, courts only look to the statutory definitions; "[a]n alien's actual conduct is irrelevant to the inquiry." [*Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015)]. A court thus "must presume that the conviction rested upon nothing more than the least of the acts criminalized" and determine whether those acts correspond to the generic federal offense referenced in the removal statute. *Moncrieffe*, 569 U.S. at 190–91, 133 S. Ct. 1678 (internal quotation marks, brackets, and citation omitted).

*Id.* at 870–71.

However, if "a state statute criminalizes offenses that fall outside of the federal generic definition, there is not a categorical match." *Id.* at 871. "If there is a categorical match between the predicate offense and generic definition, the inquiry ends there." *Id.* (citing *Esparza–Rodriguez v. Holder*, 699 F.3d 821, 825

(5th Cir. 2012)). When there is a categorical match, a state law conviction triggers removal under the INA. *Id.*

Texas Health & Safety Code § 481.113(a) provides that "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 2 or 2-A." Subsection (d) then provides, "[a]n offense under Subsection (a) is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 400 grams." *Id.* at § 481.113(d). Thus, the elements we examine are: the (1) manufacture, delivery, or possession with intent to deliver, (2) 4 grams or more but less than 400 grams of, (3) a controlled substance listed in "Penalty Group 2 or 2-A." *Id.* at § 481.113(a).

Section 237(a)(2)(B)(i) of the INA provides, in relevant part, that "[a]ny alien who . . . has been convicted of a violation of . . . any law or regulation of a State [or] the United States . . . relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)) is deportable." 8 U.S.C. § 1227(a)(2)(B)(i). The Controlled Substances Act defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6).

We are not satisfied that there is a categorical match between Texas Health & Safety Code § 481.113(a) and the INA, §1227(a)(2)(B)(i) because Texas's statute of conviction is facially broader than its federal analog. *Vazquez*, 885 F.3d at 871. There are at least six substances listed in Penalty Group 2 that do not appear on any federal schedule. *Compare* TEX. HEALTH & SAFETY CODE § 481.103(a)(1) *with* 21 U.S.C. § 812. The same is true for Penalty Group 2-A. Vetcher identified at least 43 substances that are not federally controlled. *Compare* TEX. HEALTH & SAFETY CODE § 481.1031(a) *with* 21 U.S.C.

No. 18-60449

§ 812. For this reason, there is no categorical match. *Vazquez*, 885 F.3d at 871 (holding that the BIA erred in finding that there was a categorical match between the Oklahoma statute and the INA because the Oklahoma statute prohibited at least two substances that are not on any federal schedule).

But, the inquiry does not stop there. To show that the Texas statute is broader than its federal counterpart, Vetcher must also show "a realistic probability" that Texas will prosecute the "conduct that falls outside the generic definition of a crime." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). To do so, the detainee must "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner." *Vazquez*, 885 F.3d at 873; *see United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (en banc) ("[A] defendant must point to an actual state case applying a state statute in a nongeneric manner, even where the state statute may be plausibly interpreted as broader on its face.").

Vetcher has not identified case law demonstrating a realistic probability that Texas would apply § 481.113(a) to conduct that falls outside of the federal definition. First, he pointed to anonymous state arrest records from June 2012 and August 2013 where suspects were arrested for substances that were not yet federally controlled until 2014. Then, he points to *State v. Moseley*, No. 09-14-00279-CR, 2015 WL 474331 (Tex. App.—Beaumont Feb. 4, 2015, pet. ref'd), but the substance at issue there was a federally controlled substance. 2015 WL 474331 at *4. Then, in his reply brief, he cites to the State's brief in *Carter v. Texas*, No. 07-18-00043-CR, 2018 WL 6844514 (Tex. App.—Amarillo Dec. 19, 2018), a case currently pending in the Texas intermediate appellate court, arguing that, at the time, the state prosecuted a substance (fluoro-ADB) that was not on a federal schedule until months later. *See* State's Br., 2018 WL 6844514 at *23–24, *27–29; *see also* Federal Schedule I, 21 C.F.R. § 1308.11 (eff. Apr. 10, 2017).

7

No. 18-60449

Again, "to successfully argue that a state statute is nongeneric, a defendant must provide actual cases where state courts have applied the statute in that way." *Castillo-Rivera*, 853 F.3d at 223. Because *Carter* is still pending in Texas courts, it necessarily is not settled law within the state which, in turn, does not make it reliable in this context. Reliance on a brief filed in that case is not the law. Nothing Vetcher has provided demonstrates a realistic probability that the courts in Texas will apply § 481.113(a) to conduct that falls outside of what the federal analog controls. Accordingly, we hold that there is not a realistic probability that Texas will apply § 481.113(a) in a nongeneric manner. Therefore, Vetcher is not eligible for cancellation of removal.

**B. Vetcher is Ineligible for Withholding of Removal because his State Law Conviction is a "Particularly Serious Crime" within the meaning of the Statute**

Vetcher contests the determination that he was convicted of a particularly serious crime because his conviction was found to not be an aggravated felony. In his view, the term "particularly serious crime" is limited to aggravated felonies. We disagree.

Section 241 of the INA provides an exception to removal when an alien's life or freedom would be jeopardized for any of the enumerated reasons. 8 U.S.C. § 1231(b)(3)(A). However, that exception does not apply to an alien "having been convicted by a final judgment of a particularly serious crime [who] is a danger to the community of the United States." *Id.* at § 1231(b)(3)(B)(ii).

> For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

8

*Id.* at § 1231(b)(3)(B)(iv).

Vetcher contends that the above clarifying language (1) limits particularly serious crimes to aggravated felonies with a minimum five-year prison term and (2) limits the Attorney General's discretion to determine other particularly serious crimes to aggravated felonies with prison terms up to five years in length. The government counters that a crime need not be an aggravated felony in order to be a "particularly serious crime." Specifically, the government argues that the first sentence in the statutory language that clarifies the second clause of § 1231(b)(3)(B) is a declaration that aggravated felonies are *per se* particularly serious crimes. It then argues that the second sentence grants the Attorney General the discretion to determine what is and is not a "particularly serious crime." We agree with the government for two reasons: (1) there is uniform federal circuit authority supporting its view, and (2) we understand Congress to give distinct meaning to the terms "aggravated felony" and "particularly serious crime" such that adopting Vetcher's reading of the statute would render the term "particularly serious crime" superfluous.

The First, Second, Fourth, Seventh, Ninth, and Tenth Circuits have all held that the phrase "particularly serious crime" is not limited to aggravated felonies, and have all said that determining whether a non-aggravated felony offense is a "particularly serious crime" should be done on a case-by-case basis. *E.g.*, *Valerio-Ramirez v. Sessions*, 882 F.3d 289, 296–97 (1st Cir. 2018); *Delgado v. Holder*, 648 F.3d 1095, 1104 (9th Cir. 2011); *Gao v. Holder*, 595 F.3d 549, 554 (4th Cir. 2010); *N-A-M- v. Holder*, 587 F.3d 1052, 1056 (10th Cir. 2009); *Nethagani v. Mukasey*, 532 F.3d 150, 156–57 (2d Cir. 2008); *Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006). Most recently, the Third Circuit, sitting en banc, overruled its decision in *Alaka v. Att'y Gen.*, 456 F.3d 88 (3d Cir. 2006), when it held that, in the context of withholding of removal, "both

aggravated felonies and other offenses can be particularly serious crimes." *Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255, 267 (3d Cir. 2019) (en banc).

In *Bastardo-Vale*, the Third Circuit was tasked with interpreting the phrase "particularly serious crime" within the context of the asylum statute and the withholding of removal statute, both of which are codified in the INA. *See* 8 U.S.C. § 1158(b); *see also* 8 U.S.C. § 1231. The petitioner there sought both asylum and withholding of removal, unlike Vetcher who seeks only withholding of removal as he is ineligible for asylum. *See* 8 U.S.C. § 1158(b)(2)(A)(ii). However, because the phrase is used in different sections of the same statute and in the same context of deportation relief, we agree that there should be a singular meaning of the one phrase "particularly serious crime" so that there is consistency in the interpretation of the INA as a whole. *See Bastardo-Vale*, 934 F.3d at 267 n.6 ("The differences in the statutes do not mean that the phrase 'particularly serious crime' should be given a different meaning . . . ." in the withholding of removal and asylum contexts); *see also Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1512 (2019) ("In all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning. We therefore avoid interpretations that would attribute different meanings to the same phrase.") (internal citations omitted); *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005) (holding that "when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").

Likewise, we also agree with the *Bastardo-Vale* en banc court that Congress's use of the terms "aggravated felony" and "particularly serious crime" was intentional and should be given their separate meanings. *Bastardo-Vale*, 934 F.3d at 266. If Congress intended otherwise, then it would have not

included the term alongside "aggravated felony." *See id.* ("To say that only aggravated felonies are 'particularly serious crimes' would render the words 'particularly serious crime' surplusage."). Accordingly, we conclude that Vetcher is ineligible for withholding of removal because the IJ's determination, along with the BIA's affirmance, that Vetcher was convicted of a "particularly serious crime" was not error.

## C. Vetcher's Due Process Rights Were Not Violated

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Though removal proceedings are civil, not criminal, in nature, removal proceedings must be conducted according to standards of fundamental fairness. *See Olabanji v. INS*, 973 F.2d 1232, 1234 (5th Cir. 1992); *see also In re Beckford*, 22 I. & N. Dec. 1216, 1225 (B.I.A. 2000) ("A removal hearing must be conducted in a manner that satisfies principles of fundamental fairness."). This includes an alien's right to a full and fair hearing. *See Matter of M-A-M*, 25 I. & N. Dec. 474, 479 (B.I.A. 2011). To succeed on a due process challenge to removal proceedings, a detainee must make an initial showing of substantial prejudice. *Anwar v. INS*, 116 F.3d 140, 144 (5th Cir. 1997). To show a due process violation due to inadequate law library resources, a detainee must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Vetcher argues that he has satisfied *Lewis* by showing that he was prejudiced in his pursuit of withholding and, later, cancellation of removal. Specifically, he contends that he complained on numerous occasions about the deficiency of the detention facility's law library while he was detained. He argues that his pro se efforts to challenge his detention, the finding of his removability, and the finding that he was ineligible for cancellation for removal

were hampered by the absence of Title 21 of the United States Code, Texas statutes, case law interpreting what constitutes a "particularly serious crime," United States Supreme Court precedent, and "several relevant federal cases [that] the Government cited in its briefing." We disagree.

As a pro se litigant, Vetcher successfully secured an initial stay of removal from this court. Two separate BIA decisions remanded his proceedings back to the IJ. He also preserved all relevant issues for appeal. Vetcher's intermittent successes throughout the course of his pro se efforts are beyond admirable. None of the perceived hindrances Vetcher points out stopped him from being able to research the law, draft, mail and file his pleadings, and appeal his claims for the better part of four years without the assistance of legal counsel. Implicitly, Vetcher argues that since he did not win on his claims (specifically the categorical match argument) and because those materials were unavailable, that there was a due process violation. To his detriment, that is not the legal standard. Accordingly, we find no due process violation here.

## IV.    CONCLUSION

For the aforementioned reasons, we DENY Vetcher's petition for cancellation of removal.