# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 30, 2023

Lyle W. Cayce
Clerk

No. 21-60146

Saroun Khan,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A027 291 961

Before Graves, Ho, and Duncan, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

Saroun Khan seeks relief from an order of the Board of Immigration Appeals ("BIA") affirming a decision by an Immigration Judge ("IJ") finding that he is removable for having been convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). Because the court finds that Khan's conviction under 18 Pa. Cons. Stat. § 3925(a) constitutes receipt of stolen property, and thus is an aggravated felony for purposes of the Immigration and Nationality Act ("INA"), we deny the petition for review.

No. 21-60146

## I.

Khan, a native and citizen of Cambodia, was admitted to the United States as a refugee in 1983. Khan's status was changed to that of a lawful permanent resident on May 12, 1986. In 1999, he pleaded guilty to receiving stolen property in violation of 18 PA. CONS. STAT. § 3925(a) in Pennsylvania state court and was sentenced to 3 to 24 months imprisonment. Based on that conviction, Khan was charged as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G).[1] Khan filed a motion to terminate his removal proceedings. Relevant here, Khan argued that his conviction did not categorically qualify as an aggravated felony, because a mens rea of "reason to believe" that the property was stolen, he contended, was sufficient to support a conviction under Pennsylvania law.

An IJ denied the motion. In doing so, the IJ held that § 3925(a) "on its face" requires proof of "a defendant's knowledge or belief, and that belief is not objective," and that the statute thus satisfied the generic mens rea requirement. Further, the IJ emphasized that the Superior Court of Pennsylvania, in *Commonwealth v. Newton*, 994 A.2d 1127, 1132 n.7 (Pa. Super. Ct. 2010), explained that "[t]o the extent that the phrase 'reason to believe the property was stolen' is used in our case law, we must interpret that phrase as being the equivalent to the express statutory language 'believing it had been stolen.'"

On appeal to the BIA, Khan asserted that the IJ erred for two reasons. First, he contended that his conviction did not qualify as a generic theft offense because Pennsylvania courts had commonly held that a defendant

---

[1] "[A]ggravated felony" includes "a theft offense (including receipt of stolen property)" for which the term of imprisonment was at least one year. 8 U.S.C. § 1101(a)(43)(G).

2

could be found guilty of that offense if he, *inter alia*, had a "reason to believe" that the property had been stolen. Second, the IJ improperly relied on *Newton* because it did not accurately represent the law in effect at the time of his conviction.

The BIA agreed with the IJ's determination, holding that Pennsylvania courts have not created a jurisprudential "reason to believe" standard and that § 3925(a) requires purely subjective knowledge or belief that an item is stolen. Further, the BIA noted, "even if *Newton* strayed from previous applications of the law," *Newton* applied retroactively under Pennsylvania law. The BIA then upheld removal and dismissed the appeal. Khan now petitions this court for review.

## II.

"When reviewing a BIA decision, questions of law are reviewed de novo, but this Court defers to the BIA's interpretation of immigration statutes and regulations." *Vazquez v. Sessions*, 885 F.3d 862, 870 (5th Cir. 2018) (citing *Danso v. Gonzales*, 489 F.3d 709, 712–13 (5th Cir. 2007)). Though our review is generally limited to the BIA's decision, we may also review the IJ's decision when it influences the BIA's decision or where the BIA has adopted all or part of the IJ's reasoning. *Le v. Lynch*, 819 F.3d 98, 104 (5th Cir. 2016).

## III.

Khan argues that § 3925(a) is broader than the generic theft offense and that, accordingly, his conviction under the statute does not constitute an aggravated felony for receipt of stolen property. In addition, Khan contends that applying *Newton* retroactively violates his due process rights and implicates *ex post facto* concerns.[2] We discuss each argument in turn.

---

[2] It is well-settled that the *Ex Post Facto* Clause does not apply to the judiciary. *See Rogers v. Tennessee*, 532 U.S. 451, 460 (2001) ("The *Ex Post Facto* Clause, by its own terms, does not apply to courts."). Thus, to the extent that Khan makes this argument, we address it as a due process claim.

**A.**

Noncitizens convicted of certain criminal offenses are removable. *See* 8 U.S.C. § 1227(a)(2). To determine whether a noncitizen's state conviction constitutes a removable offense, we apply a categorical approach comparing the elements of the state statute with the elements of the generic federal offense as defined in the INA. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). "A state offense is a categorical match with a generic federal offense only if a conviction of the state offense would necessarily involve proving facts that would establish a violation of the generic federal offense." *Vetcher v. Barr*, 953 F.3d 361, 366 (5th Cir. 2020) (citation omitted). If "a state statute criminalizes offenses that fall outside of the generic definition, there is not a categorical match." *Id.* (citation omitted).

The categorical approach "requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Vazquez*, 885 F.3d at 871 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). To show this, the noncitizen must establish "that the State actually prosecutes the non-generic offense." *Id.* (internal quotations and citations omitted).

Neither the INA nor the BIA defines the term "theft offense," but we have construed it to mean the "taking of property or an exercise of control over property *without consent* with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Martinez v. Mukasey*, 519 F.3d 532, 540 (5th Cir. 2008) (emphasis in original) (quoting *Burke v. Mukasey*, 509 F.3d 695, 697 (5th Cir. 2007)). "[T]his generic definition requires an intent to deprive the owner of the benefit proceeding from possession of the stolen goods." *United States v. Sanchez-Rodriguez*, 830 F.3d 168, 172 (5th Cir. 2016) (internal quotations and citation omitted). To satisfy this generic mens rea requirement for a receipt

of stolen property offense under the INA the offense must, at a minimum, require a subjective mens rea of "knowledge or belief" that the property was stolen. *In re Deang*, 27 I. & N. Dec. 57, 61, 63 (BIA 2017).

Khan contends that the BIA erred in determining that his Pennsylvania conviction for receipt of stolen property qualifies as an aggravated felony. Specifically, Khan argues that § 3295(a) cannot qualify as an aggravated felony because, at the time of his conviction, Pennsylvania courts had long interpreted § 3295(a) as requiring only a "reason to believe" mens rea to satisfy a conviction.

The statute underlying Khan's conviction is 18 Pa. Cons. Stat. § 3925(a), which provides that: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

The Third Circuit has recently held that a conviction under this statute qualifies as an aggravated felony conviction. *See Barradas Jacome v. Attorney Gen. United States*, 39 F.4th 111, 123 (3d Cir. 2022), *cert. denied sub nom. Barradas-Jacome v. Garland*, 22-595, 2023 WL 3158362 (U.S. May 1, 2023). We agree. In particular, we find that the Pennsylvania statute falls within the generic definition of "a theft offense" because the statute, by its plain text, requires the offender have "knowledge or belief" that the property was stolen. *Id.* at 123–24; *see Deang*, 27 I. & N. Dec. at 63.

Despite the language of § 3925(a), Khan argues that at the time of his conviction, Pennsylvania courts routinely applied a lower mens rea standard of "reason to believe" for receiving stolen property. However, this argument was recently resolved, adversely to Khan's position, in *Barradas Jacome v. Att'y Gen. United States*. *See* 39 F.4th at 123. There, the court explained that the text of § 3925(a) was amended by the Pennsylvania legislature in 1972 to remove its objective reasonable person standard. *See id.* at 123 n.9; *see also*

No. 21-60146

Act of Dec. 6, 1972, No. 334, 1972 Pa. Laws 1482, 1538–39. However, after its adoption, Pennsylvania lower courts were less than clear about the application of its mens rea standard. *Id.* at 124 n.10. Some of these lower courts applied the updated statute as written. *See, e.g.*, *Commonwealth v. Robbins*, 647 A.2d 555, 557 (Pa. Super. Ct. 1994) ("Therefore, to obtain a conviction for receiving stolen property the Commonwealth must establish beyond a reasonable doubt that the defendant knew or should have known that the property was stolen."); *Commonwealth v. Stafford*, 623 A.2d 838, 839 n.2 (Pa. Super. Ct. 1993), *aff'd*, 652 A.2d 297 (Pa. 1995) ("Model Penal Code, § 223.6, served as the basis for the present offense of receiving stolen property when the Legislature drafted the 1972 Crimes Code . . . and reads: . . . [a] person is guilty of theft if he purposely receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen . . . .").

Other courts, however, cited the outdated mens rea language, even though they ultimately concluded that the offenders actually knew that they were receiving stolen property. *See, e.g.*, *Commonwealth v. Foreman*, 797 A.2d 1005, 1013 (Pa. Super. Ct. 2002) ("We find that sufficient circumstantial evidence existed for the trier of fact to conclude that Appellant received stolen goods knowing that they were stolen."); *Commonwealth v. Grabowski*, 452 A.2d 827, 830 (Pa. Super. Ct. 1982) ("The evidence in the instant case was sufficient to prove that appellant had received the Chevrolet truck knowing that it had been stolen or having reason to believe that it had probably been stolen."); *Commonwealth v. Brady*, 560 A.2d 802, 806 (Pa. Super. Ct. 1989) ("Here, it is clear that the property had been stolen and that appellant knew it had been stolen."); *Commonwealth v. Matthews*, 632 A.2d 570, 573 (Pa. Super. Ct. 1993) ("The present case is not similar to those cases where the condition of the vehicle clearly indicated that it had been stolen or

No. 21-60146

where the actions of the accused support the inference *that he knew the vehicle was stolen.*") (emphasis added).

Thus, as the court in *Barradas Jacome* explained, while these cases use "loose language," it appears only to reflect an oversight, not the creation of an objective requirement. *See Barradas Jacome*, 39 F.4th at 123; *see also De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 637 (3d Cir. 2002) (rejecting defendant's argument that Pennsylvania Superior Court cases "injected an objective element into the Pennsylvania statute"). Indeed, none of the decisions Khan relies upon involve a defendant who was prosecuted, or convicted, for receiving stolen property under a mens rea of "reason to believe," as opposed to the subjective standard put forth in § 3925(a). Consequently, we conclude that this use of outdated language does not establish a realistic probability of conviction under § 3925(a).

In sum, the Third Circuit, in two well-reasoned opinions, has held that Pennsylvania's receipt of stolen property offense does not have an objective element and is "purely subjective." *Barradas Jacome*, 39 F.4th at 123; *De Leon-Reynoso*, 293 F.3d at 636. The Third Circuit has considered variations on Khan's argument and has rejected them. We are not inclined to part ways with those opinions. We, therefore, conclude that 18 PA. CONS. STAT. § 3925(a) is a categorical theft offense, and thus qualifies as an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii).

## B.

Lastly, Khan contends that by applying *Newton* retroactively, the BIA violated his due process rights.[3] However, this argument is unavailing.

---

[3] Khan also argues that the BIA erred in relying on *Commonwealth v. Nero*, 58 A.3d 802 (Pa. Super. Ct. 2012), because it was decided in 2012, 14 years after his conviction. However, the BIA only used this case to set out the elements of § 3925(a), which are already in the text of the statute. So, for the same reasons that his argument regarding *Newton* fails, this argument is also unpersuasive.

No. 21-60146

Retroactivity need not be addressed when a decision does not change the law. *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 534 (1991) ("It is only when the law changes in some respect that an assertion of nonretroactivity may be entertained."); *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106 (1971) ("[T]he decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." (citations omitted)).

Despite Khan's contentions and the BIA's assertion that *Newton* applied retroactively, such a proposition is unfounded. *Newton* did not announce a new rule, but instead clarified an existing rule that was adopted with the passage of the newest version of § 3925. *Newton* explained, as outlined above, that the Pennsylvania legislature explicitly removed the "reason to believe" standard from § 3925(a) in 1972. *See Newton*, 994 A.2d at 1132. Given the differences between the language in the pre-1972 statute and its current version, the court stated, "[w]e interpret this change as eliminating any suggestion that a person can be found guilty of receiving stolen property simply by retaining property that a reasonable person would conclude is probably stolen." *Id.* at 1131–32.

Thus, *Newton* did not announce a new rule; *Newton* renewed and reemphasized the understanding that § 3925(a) is subjective and lacks the objective component found in its predecessor. Consequently, *Newton* does not constitute a change in the law that triggers retroactivity analysis.[4]

## IV.

For the reasons stated above, the petition for review is DENIED.

---

[4] As a result of our disposition of Khan's first argument, we need not address his contention that the BIA erred by ignoring the test set forth by the Pennsylvania Supreme Court for determining whether a judicial decision should be applied retroactively.

No. 21-60146

James C. Ho, *Circuit Judge*, concurring in the judgment:

The word "alien" is ubiquitous in statutes, regulations, judicial decisions, and scholarly commentary on federal immigration law. But despite this established usage, some members of the judiciary have recently begun to signal their opposition to using that term, on the ground that it is "offensive." *Avilez v. Garland*, 48 F.4th 915, 917 n.1 (9th Cir. 2022). Respectfully, I do not share in that sentiment.

United States citizenship is one of the greatest privileges this world has ever known. My own path to that privilege began with my admission into this country as an alien. The United States government assigned me an alien registration number. That number appears on my application for status as a lawful permanent resident alien. It also appears on numerous other forms, including the INS notification granting my application for permanent resident alien status—and ultimately, my certificate of citizenship.

These documents are among my most treasured possessions. That is for one simple reason: It is my exquisitely good fortune that I was admitted into this country as an alien—and later naturalized as a citizen. I cannot imagine how enormously different (and considerably worse, I am sure) my life would have been had I not been granted resident alien status in America.

There's no need to be offended by the word "alien." It's a centuries-old legal term found in countless judicial decisions. *See*, *e.g.*, *Martin v. Hunter's Lessee*, 14 U.S. 304, 370 (1816); *Gibbons v. Ogden*, 22 U.S. 1, 221 (1824). It's used in numerous acts of Congress—including the ones that allowed me to become an American. To this day, both 8 U.S.C. and 8 C.F.R. address the subject of "Aliens and Nationality."

Some members of the judiciary are nevertheless concerned that "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed.'" *Avilez*, 48 F.4th at 917 n.1.

9

No. 21-60146

That may be true in certain contexts. The word also refers to extraterrestrials in other contexts.

But we always read words in their proper context. And in the context of immigration law, we use "alien," not to disparage one's character—or to denote one's planetary origin—but to describe one's legal status.[1]

I agree with my colleague (and fellow former alien) Judge Bea: "Our federal immigration statutes concern themselves with aliens. This word is not a pejorative nor an insult. . . . [W]hen used in its statutory context, it admits of its statutory definition, not those definitions with negative connotations that can be plucked at will from the dictionary." *Id.* at 933 (Bea, J., concurring). *Cf.* Bryan A. Garner, Garner's Dictionary of Legal Usage 912 (Oxford 3rd ed. 2011) ("*Illegal alien* is not an opprobrious epithet: it describes one present in a country in violation of the immigration laws (hence 'illegal')."); *Texas v. United States*, 787 F.3d 733, 745 n.15 (5th Cir. 2015) (same).

So I see no need to bowdlerize statutes or judicial decisions that use the word "alien" by substituting terms like "non-citizen."

I concur in the judgment.

---

[1] *See, e.g., Abraugh v. Altimus*, 26 F.4th 298, 301 (5th Cir. 2022) ("depending on context, 'goat' can mean 'an athlete who failed, garishly, hilariously, and at the worst possible time'—or the 'greatest of all time'") (and collecting other examples). To take another example: Many provisions of federal law use the term "he"—not as a masculine pronoun, but as a generic term, when read in context. *See also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise— . . . words importing the masculine gender include the feminine as well"). Women have held office in all three branches of the federal government—and in doing so, they surely did not violate Article I of the Constitution, or Article II (or the Twelfth Amendment), or 28 U.S.C. § 333.