**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jorge ORTIZ, Defendant-Appellant.**

No. 79–5125
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1980.

Joel H. Brown, Miami, Fla., for defendant-appellant.

Caridad P. Matthews, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges.

PER CURIAM:

A jury found Jorge Ortiz guilty of (i) distribution of cocaine, in violation of 21 U.S.C.A. § 841(a)(1), (ii) possession with intent to distribute cocaine, in violation of 21 U.S.C.A. § 841(a)(1), and (iii) conspiracy to distribute or to possess cocaine with intent

* Fed.R.App.P. 34(a);  5th Cir.R. 18.

to distribute, in violation of 21 U.S.C.A. § 846. Ortiz was sentenced on each count to an indefinite term of treatment and supervision by the Youth Corrections Division, pursuant to the Federal Youth Corrections Act, 18 U.S.C.A. § 5010(b) (Supp.1979), the sentences to run concurrently as to each of the three counts. Appellant does not challenge his conviction on the conspiracy count, but argues on appeal that the evidence was insufficient for conviction on the distribution and possession counts. First, he relies upon his adaptation of the so-called cocaine isomer defense strategy, used at trial. That strategy, he contends, demonstrated that the chemical identification tests used by the government could not adequately distinguish between allegedly legal and concededly illegal forms of cocaine, and that therefore the distribution and possession convictions must fail for want of proof. Second, he challenges his conviction under the possession count, arguing that neither constructive possession nor aiding and abetting liability were sufficiently evidenced. We reject his first contention, invoke the concurrent sentence doctrine in order to reject the second, and affirm.

The cocaine isomer strategy is no stranger to this Court. The strategy is extensively described in *United States v. Bockius,* 5 Cir., 1977, 564 F.2d 1193, 1194–96. The basis of the strategy is an assumption that only one of eight isomers of cocaine, the L-cocaine isomer, is a "controlled sub-stance" under the federal narcotics laws.[1] All isomers are similar, and it is contended that certain types of government testing procedures are incapable of differentiating the allegedly legal isomers from the concededly illegal isomer, L-cocaine. Past appeals involving the cocaine isomer strategy have revolved around the *type* of identification test performed. Frequently litigated has been the government's failure to run a polarimeter test, said to be necessary in order to differentiate between L-cocaine and one of the seven synthetic isomers, D-cocaine.[2] In this case, the government's expert witness did perform a polarimeter test, as well as four other chemical tests.[3]

In this case, Ortiz puts a new twist on the cocaine isomer strategy, but to no avail. In contrast to previous appeals involving the cocaine isomer strategy, Ortiz does not allege a failure to use a certain type of test, such as a polarimeter test. Instead, he argues that the data derived from the tests used is unreliable because the government failed to perform a "comparative analysis" for each synthetic isomer of cocaine. That is, whenever the government runs tests on substances thought to be cocaine, appellant contends that it must assemble at the laboratory known samples of each of the seven synthetic (and allegedly legal) isomers of cocaine, subject all seven plus the unknown substance to the *same* battery of tests, and then directly compare the laboratory data. Otherwise, it is argued, the L-cocaine identification is unrelia-

---

1. For this appeal, we assume, without deciding, that only the natural derivative of coca leaves, known as L-cocaine, is a controlled substance under Schedule II of 21 U.S.C.A. § 812(c)(II)(a)(4). That statute defines as a controlled substance:

Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocanized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

The case was presented to the jury on the basis that only L-cocaine is illegal, and neither party contests that presentation on appeal. As in *United States v. Bockius, supra* at 1194 n.1, it is unnecessary to construe the scope of the Schedule II definition of cocaine, and we reserve that issue for another day.

2. *United States v. Hall,* 9 Cir., 1977, 552 F.2d 273 (unnecessary to perform polarimeter tests where extensive circumstantial evidence indicated substance was L-cocaine); *United States v. Orzechowski,* 7 Cir., 1977, 547 F.2d 978 (evidence sufficient to establish substance as L-cocaine despite lack of a polarimeter test). *Cf. United States v. Bockius, supra* (recess in trial to perform polarimeter test).

3. The four other tests performed were: (1) a microscopic examination; (2) a crystal test; (3) gas liquid chromatography; and (4) infrared spectography.

ble. Appellant's sole support for this argument derives from the testimony of the government's expert witness, a forensic chemist, as educed on cross-examination by appellant's attorney.

At trial, the government's expert witness testified that only one of the seven synthetic isomers, L-psuedo cocaine, was used in a comparative manner. The witness further explained, however, that a comparative analysis is not the only way to reliably identify chemical substances. Instead, accepted scientific theory predicts that different cocaine isomers will produce differentiable test data. Hence, confusion between L-cocaine and the six isomers which were not directly compared by the chemist[4] was eliminated by resort to accepted scientific theory.[5] On redirect examination, the expert further indicated that he had employed "the accepted and the usual tests performed in [the expert's] field." No controverting evidence—by expert testimony, referenced to learned treatise,[6] or otherwise—was presented by the appellant on this issue. Indeed appellant presented no direct evidence, and the case went to the jury on the government's evidence alone. The deficiencies in the expert's approach were, however, fully argued in defense counsel's closing statement to the jury.

In essence, the chemist's L-cocaine identification was based upon accepted scientific knowledge rather than personal experience. Although the admissibility into evidence of the expert's opinion is not the issue before us, it is noteworthy that F.R.Evid. 703 permits an expert witness to base his or her opinion upon knowledge "reasonably relied upon by experts in the particular field." See Nanda v. Ford Motor Corp., 7 Cir., 1974, 509 F.2d 213, 222; 2 J. Wigmore, Evidence § 665b (3d ed. 1940). Here there was uncontroverted and essentially unimpeached testimony which fairly indicated a scientifi-

cally accepted basis for the expert witness' chemical identification.

Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704, requires us to consider the evidence and all reasonable inferences flowing therefrom in a manner most favorable to the government. Then we ask whether the jury could "reasonably, logically, and legally infer from the evidence presented," United States v. Bright, 5 Cir., 1976, 541 F.2d 471, 476, that the L-cocaine identification was established beyond a reasonable doubt. Through Glasser spectacles, the expert witness' uncontroverted opinion must be viewed to be both reliable and well-grounded in accepted scientific knowledge. That opinion constituted "substantial" evidence. See United States v. Malatesta, 5 Cir., 1979, 590 F.2d 1379 (en banc). So viewed, we have no difficulty whatsoever in finding the evidence sufficient beyond a reasonable doubt to establish the L-cocaine identification. We therefore affirm Ortiz's conviction for distribution of cocaine.

■ Appellant secondly contests the sufficiency of the evidence used to establish his possession of the cocaine with intent to distribute, although he does not challenge his conviction for conspiracy to commit that offense. This is a proper case for application of the concurrent sentence doctrine. See United States v. Rubin, 5 Cir., 1979, 591 F.2d 278; United States v. Juarez, 5 Cir., 1978, 566 F.2d 511, 516; United States v. Alvarez, 5 Cir., 1977, 548 F.2d 542, 544; United States v. Buchanan, 5 Cir., 1977, 544 F.2d 1322, 1325, cert. denied, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080. Appellant was properly convicted of distribution of cocaine and on that count received a sentence to run concurrently with the sentences imposed under the possession (and conspiracy to possess) counts. United States v. Hernandez, 5 Cir., 1979, 591 F.2d

---

4. The remaining six isomers, for which no comparative sample was utilized, are: D-cocaine, L-pseudo alocaine, D-alocaine, L-alocaine, D-pseudo alocaine, and D-pseudo cocaine.

5. Moreover, the chemist indicated that at least two of the six unobtained isomers were theo-

retical isomers, not presently in existence. Cf. United States v. Hall, supra at 276 (experts testified that they had "never actually found a specimen of d-cocaine [a synthetic isomer].")

6. See F.R.Evid. 803(18) (learned treatise exception to the hearsay rule).

1019 (en banc) applies only to consecutive sentences, *United States v. Cortes*, 5 Cir., 1979, 606 F.2d 511, and Ortiz does not, in any event, seek to apply *Hernandez* to his concurrent sentences. Ortiz's second contention is therefore rejected on the basis of the concurrent sentence doctrine.

AFFIRMED.