# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60748

United States Court of Appeals
Fifth Circuit

**FILED**
June 8, 2020

Lyle W. Cayce
Clerk

RICHARD LAWRENCE ALEXIS,

Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A043 155 894

Before DENNIS, GRAVES, and WILLETT, Circuit Judges.

JAMES E. GRAVES JR., Circuit Judge:

Richard Lawrence Alexis ("Alexis") petitions this court for review of an order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ's") decision finding him removable under Section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1227(a)(2)(B)(i). Alexis also seeks review of the BIA's denial of his applications for asylum and withholding of removal and protection under the Convention Against Torture ("CAT"). For the following reasons, we DENY in part and DISMISS in part Alexis's petition.

No. 18-60748

# I. FACTUAL AND PROCEDURAL BACKGROUND

Alexis, a native and citizen of Trinidad and Tobago, entered the United States in 1991 as a legal permanent resident. His mother, step-father, three siblings, and young daughter are U.S. citizens. In November 2016, Alexis pled guilty and was sentenced to one year in prison for the Texas offense of possession of a controlled substance in an amount of less than one gram.

On January 23, 2018, the Department of Homeland Security ("DHS") initiated removal proceedings against Alexis, alleging that he was removable as an admitted alien under 8 U.S.C. § 1227(a)(2)(B)(i) for a conviction relating to a controlled substance, specifically cocaine. At his initial hearing, Alexis admitted that he was convicted of Texas's controlled substance offense but denied that the offense involved cocaine because the judgment of conviction did not specify the type of controlled substance. Accordingly, Alexis contested the charge of removability under 8 U.S.C. § 1227(a)(2)(B)(i).

## A. Motion to Terminate Removal Proceedings

Shortly after his initial hearing, Alexis filed a motion to terminate removal proceedings, arguing that his state conviction did not qualify as a federal controlled substance offense ("CSO") and that DHS could not meet its burden of establishing removability. The IJ denied the motion to terminate removal proceedings, applying the categorical approach to determine if Texas's cocaine offense[1] was a categorical match to the generic federal offense.

---

[1] Alexis made two challenges in his motion to terminate proceedings—one on Texas's definition of "controlled substances" and the other on Texas's definition of "cocaine." The IJ agreed with Alexis that Texas's definition of "controlled substances" is overbroad and that there was a realistic probability that Texas prosecutes individuals for monoacetylmorphine. *Compare Chavez v. State,* No. 03-99-00256-CR, 2000 WL 1027910, at *2 (Tex. App. July 27, 2000) (conviction for possession of monoacetylmorphine), *with* 21 U.S.C. § 812 (Federal Schedules of Controlled Substances which do not include monoacetylmorphine). The IJ then applied the modified categorical approach and determined that Alexis's conviction explicitly incorporated the indictment to which Alexis pled guilty, and that the indictment specified

No. 18-60748

Although the IJ found Texas's definition of "cocaine," unlike the federal definition, includes position isomers of cocaine, the IJ determined that Alexis could not establish a realistic probability that Texas prosecutes individuals for possession of position isomers of cocaine. The BIA affirmed the IJ's finding that Alexis could not establish a realistic probability that Texas prosecutes possession of position isomers of cocaine.

## B. Applications for Asylum, Withholding of Removal, and CAT

Alexis also submitted applications for asylum and withholding of removal on account of his membership in three particular social groups ("PSG"): "children unable to leave a family relationship"; "family members of Alexis's cousins who are gang members"; and "individuals in Trinidad and Tobago with mental illnesses exhibiting psychotic features who are unable to assimilate into society." The IJ made a positive credibility determination but determined that Alexis could not establish membership in a distinct, cognizable PSG. First, the IJ determined the proposed PSG of "children unable to leave family relationships" failed to satisfy the social distinction or social recognition requirement and that Alexis could not demonstrate a well-founded fear of future persecution because his abusive father did not harm him when he spent nearly two years in Trinidad and Tobago after a 2009 deportation. Second, the IJ determined that "family members of Alexis's cousins who are gang members" was an "inherently diffuse" group lacking particularity. Third,

---

that Alexis possessed cocaine. Based on the indictment, the IJ found Alexis removable for his conviction for possession of a controlled substance. The BIA affirmed this determination.

Alexis forfeited his challenge to the BIA's decision on Texas's "controlled substances" offense because he offers no argument on appeal to find legal error in the BIA's decision. *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006). Rather than make any challenge, Alexis only asks us to assume for the sake of argument that if Texas's controlled substance definition is in fact divisible, then the Texas definition of "cocaine" itself is overbroad and not further divisible. Accordingly, we only consider his challenge to Texas's definition of "cocaine."

No. 18-60748

the IJ determined that "individuals in Trinidad and Tobago with mental illnesses exhibiting psychotic features who are unable to assimilate into society" was too amorphous and too subjective to satisfy the particularity requirements for a PSG and that Alexis was not harmed on account of his mental illness when he returned to Trinidad and Tobago after a 2009 deportation. The IJ also denied withholding of removal under 8 U.S.C. § 1231(b)(3), which has more stringent standards than asylum. Finally, the IJ found Alexis ineligible for protection under CAT because there was insufficient evidence that Alexis would more likely than not be tortured by the Trinidad and Tobago government or by the government's acquiescence or willful blindness of private entities committing torture. Accordingly, the IJ ordered Alexis to be deported.

The BIA affirmed the IJ's determination that Alexis had not established past persecution or fear of future persecution on account of his membership in a cognizable PSG. The BIA also affirmed the IJ's findings that Alexis could not satisfy the requirements for asylum or withholding of removal and was ineligible for protection under the CAT. Alexis timely filed a petition for review of the BIA decision and also sought a stay of removal in the Fifth Circuit. *See* 8 U.S.C. § 1252(b)(1). The stay of removal was denied, and Alexis has since been physically removed from the United States. We have jurisdiction to review the final order of removal as Alexis has exhausted his claim before the BIA; though our review is limited by statute in certain respects. *See* 8 U.S.C. §§ 1252(d)(1), 1252(a)(2)(D).

## II. STANDARD OF REVIEW

"When reviewing a BIA decision, questions of law are reviewed de novo," but we defer "to the BIA's interpretation of immigration statutes and regulations." *Vazquez v. Sessions*, 885 F.3d 862, 870 (5th Cir. 2018) (citing *Danso v. Gonzales*, 489 F.3d 709, 712–13 (5th Cir. 2007)). We may "only

consider the IJ's decision to the extent that it influenced the BIA." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). We afford "no deference . . . in reviewing the BIA's interpretation of state criminal law." *Sarmientos v. Holder*, 742 F.3d 624, 627 (5th Cir. 2014); *see also Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002) ("Determining a particular federal or state crime's elements lies beyond the scope of the BIA's delegated power or accumulated expertise.").

## III. DISCUSSION

### A. Whether Alexis's conviction for possession of cocaine in Texas is categorically a disqualifying controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i) as a ground for removability.

On appeal, Alexis argues that Texas's definition of "cocaine" is categorically overbroad and indivisible. Alexis maintains that DHS cannot meet its "burden of establishing clear and convincing evidence" that he is deportable and asks us to grant his petition for review and vacate the BIA's order. *See* 8 U.S.C. § 1229a(c)(3)(A). To determine if a state law conviction renders an alien eligible for removal under the INA, courts apply the categorical approach. *Vazquez*, 885 F.3d at 870. Under this approach, we only look to the state and federal statutory definitions; "[a]n alien's actual conduct is irrelevant to the inquiry." *Mellouli v. Lynch,* 575 U.S. 798 (2015). "But, the inquiry does not stop there. To show that the Texas statute is broader than its federal counterpart, [Alexis] must also show 'a realistic probability' that Texas will prosecute the 'conduct that falls outside the generic definition of a crime.'" *Vetcher v. Barr*, 953 F.3d 361, 367 (5th Cir. 2020) (quoting *Moncrieffe v. Holder,* 569 U.S. 184, 191 (2013)).

The parties do not dispute that Texas's definition of "cocaine" is facially broader than the federal definition of "cocaine." "Cocaine," as defined under

Texas law, includes "its salts, its optical, *position*, and geometric isomers,[2] and the salts of those isomers." Tex. Health & Safety Code § 481.102(3)(D) (emphasis added). However, the Controlled Substances Act covers "cocaine, its salts, optical and geometric isomers, and salts of isomers," but does not list position isomers of cocaine. *See* 21 U.S.C. § 812(c), Schedule II(a)(4); *see also* 21 U.S.C. § 802(17) (defining "isomer" in Schedule II(a)(4) as "any optical or geometric isomer"). Thus, we are not satisfied that there is a categorical match between Texas Health & Safety Code § 481.102(3)(D)(i) and Federal Schedule II(a)(4) because Texas's definition of "cocaine" is facially broader than its federal analog. *Vazquez*, 885 F.3d at 871.

The crux of the parties' dispute hinges on whether Alexis has demonstrated "a realistic probability" that Texas will prosecute the "conduct that falls outside the generic definition of a crime." *Moncrieffe,* 569 U.S. at 191 (2013). To do so, Alexis must "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner." *Vazquez*, 885 F.3d at 873 (citing *Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007)). The Fifth Circuit creates "*no exception* to the *actual case requirement* articulated in *Duenas-Alvarez* where a court concludes a state statute is broader on its face." *United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (emphasis added) (citing *Duenas-Alvarez,* 549 U.S. at 193). Because Alexis cannot demonstrate that the statute was applied non-generically in his own case, we examine whether Alexis can point to other cases where Texas has

---

[2] "An isomer is any of two or more chemical compounds having the same constituent elements in the same proportion by weight but differing in physical or chemical properties because of differences in the structures of their molecules." *United States v. Kelly,* 874 F.3d 1037, 1044 n.4 (9th Cir. 2017) (citing *Isomer*, Webster's New College Dictionary (2009)); *see also Ex parte Wilson*, 588 S.W.2d 905, 907 (Tex. Crim. App. 1979) ("Isomeric compounds are composed of the same elements united in the same proportions by weight, but differ in one or more properties because of a difference in structure.").

prosecuted or currently prosecutes individuals for possession of "position isomers of cocaine."[3]

None of the cases on which Alexis relies support his interpretation of the statute regarding position isomers of cocaine. Alexis cites to *Evans v. State,* 202 S.W.3d 158, 160 (Tex. Crim. App. 2006), in which a defendant was convicted for possession of the aggregate weight of different forms of cocaine— one baggie contained "white powder" and the other contained "yellow rocks or yellowish rock powder." Alexis relies on *Evans* as proof that Texas does not exclude position isomers of cocaine because it prosecutes individuals for the aggregate weight of cocaine. While it is possible that Texas prosecuted the defendant in *Evans* for the possession of only position isomers of cocaine, it is also equally plausible that the aggregate weight also included optical or geometric isomers of cocaine or their salts. *See United States v. Ortiz*, 610 F.2d 280, 281 (5th Cir. 1980) (noting that "certain types of government testing procedures are incapable of differentiating the allegedly legal isomers [out of the eight possible isomers of cocaine] from the concededly illegal isomer . . ."). We cannot, as the dissent recommends, rely on *Evans* because it does not specifically analyze position isomers of cocaine and clearly fails our requirement of the realistic probability test. *See, e.g., United States v. Young*, 872 F.3d 742, 746 (5th Cir. 2017) (concluding that the realistic probability test was unsatisfied where defendant "could not identify even a single case in which

---

[3] During oral arguments, Alexis conceded that the en banc majority decision in *Castillo-Rivera* requires that he cite to a case in which Texas has prosecuted an individual for "position isomers of cocaine" to satisfy the realistic probability test. Indeed, the Supreme Court has illustrated how one can satisfy the realistic probability test, stating that if "the federal firearms statute . . . contains an exception for 'antique firearm[s]'" and the "state firearms law . . . lacks such an exception," "a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms" to "defeat the categorical comparison in this manner." *Moncrieffe,* 569 U.S. at 205–06.

Mississippi has" prosecuted the "lustful touching of a child's shoulder, ear, or toe"—body parts not included in the federal definition of abusive sexual contact). "A defendant who argues that a state statute is nongeneric cannot simply rest on plausible interpretations of statutory text made in a vacuum." *Castillo-Rivera*, 853 F.3d at 222. Therefore, Alexis's "theoretical possibility" derived from *Evans* is insufficient to demonstrate a realistic probability. *Id.*

Alexis next cites to *Durham v. State*, 701 S.W.2d 951, 955 (Tex. App. 1986), where the Texas Court of Appeals determined a state indictment specifying "amphetamine" as the controlled substance was sufficient to include both its isomers and salts even though the federal analog did not make "any reference to a particular type or kind of amphetamine." We similarly cannot rely on this case analyzing amphetamine as a realistic probability that Texas will prosecute an individual for possession of position isomers of cocaine. *See, e.g., Castillo-Rivera*, 853 F.3d at 225-26 (declining to find a realistic probability in a state case analyzing an entirely different criminal statute under Texas Penal Code § 22.02 rather than § 46.04).

Alexis also suggests that "scopolamine" is a "particular position isomer of cocaine" that could test positive as cocaine in field drug tests but has both medicinal and recreational uses. However, Alexis draws this conclusion from an article which quoted a "drug dealer in the capital city of Bogota" who merely "sa[id] that one gram of Scopolamine is similar to a gram of cocaine." Yukio Strachan, *Is Scopolamine the World's Scariest Drug?*, May 14, 2012, at http://www.digitaljournal.com/article/324779. Alexis also contends that both cocaine and scopolamine *uniquely* share the same "molecular formula" of "$C_{17}H_{21}NO_4$," but he ignores that this molecular formula yields over 8,000 search results in PubChem, an open chemistry database from the National Institutes of Health ("NIH"). Critically, Alexis cannot point to a case in which Texas actually prosecutes the exclusive possession of "scopolamine."

8

No. 18-60748

We are sympathetic to Alexis's challenge in finding a case that meets the realistic probability test. Although controlled substances include several derivatives of isomers or salts, a Texas "indictment[4] need only allege the name of the substance; it need not go further and describe the offense as a salt, isomer, or any other qualifying definition." Michael B. Charlton, Tex. Prac., Texas Criminal Law, *Controlled Substances* § 30.1 (2019). Therefore, prosecutors and criminal defense attorneys will likely never seek testing of the isomer types of cocaine. Immigration attorneys, like Alexis's counsel, are also unable to relitigate the criminal case to seek a more specific indictment and must instead rely on the preserved criminal record.

Moreover, Alexis has pointed out that Texas does not "test each and every rock of suspected crack cocaine" found in an individual baggie of a homogenous substance. *Melton v. State,* 120 S.W.3d 339, 342 (Tex. Crim. App. 2003) (holding it was unnecessary for the state toxicologist to test "each rock" when testing an "unspecified number of rocks" with the same appearance in the same receptacle was sufficient). Thus, although Texas goes to great lengths to specify types of cocaine isomers, sample drug testing is further evidence that Texas does not treat the different forms of cocaine as distinct, separate substances.

 Further complicating Alexis's burden, a majority of criminal cases are resolved without a written judicial decision or by plea bargain. *See Missouri v. Frye,* 566 U.S. 134, 132 (2012) (noting that "97 percent of federal convictions and 94 percent of state convictions are the result of guilty pleas"). Guilty pleas

---

[4] Texas's definition of a "controlled substance" includes the "aggregate weight of any mixture, solution, or other substance containing a controlled substance." Tex. Health & Safety Code § 481.002(5); *see also Crowl v. State,* 611 S.W.2d 59, 62 (Tex. Crim. App. 1980) (noting that prior to "cocaine" being specifically named in Texas's penalty group, indictments had to allege "why (cocaine), a substance not [then] listed by name in a penalty group, is a controlled substance").

do not result in a reported decision from state court, which means that citable state decisions are only available in a very small percentage of prosecutions that result in both a trial and appeal. Accordingly, it is nearly impossible for Alexis to determine if Texas has ever prosecuted anyone for possession of position isomers of cocaine in a citable state decision.

Due to Texas's indictment process, drug testing procedures, and limited citable decisions, Alexis is essentially in a Catch-22 situation when it comes to meeting the realistic probability test. Although Alexis's point[5] is well-taken, we are constrained by *Castillo-Rivera* which dictates that such speculation over whether Texas prosecutes the possession of position isomers of cocaine is only "educated guessing." 853 F.3d at 222. Unfortunately, Alexis cannot rely on such "legal imagination to a state statute's language" to demonstrate a realistic probability. *Duenas-Alvarez*, 549 U.S. at 193; *see also United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) ("Although this is a clever hypothetical, it is the type of argument the Supreme Court has instructed us to avoid crediting.").

Accordingly, without an "actual case"[6] establishing that Texas applies its cocaine possession statute "in the special (nongeneric) manner for which he

---

[5] This case exemplifies the tension that Judge Higginson once predicted—the "absolute requirement in every case . . . additionally places an impractical burden on defendants without access to the required information. With most criminal prosecutions ending in plea agreements and putative charges driving plea negotiations, the conduct states define as criminal may not be expressed in appellate-level decisions, and the evidence required to satisfy the majority's rule may thus be unavailable." *Castillo-Rivera*, 853 F.3d at 244–45. Indeed, "[o]ur ongoing struggle to apply the categorical approach while respecting the congressional purpose to enhance punishment . . . may justify Supreme Court intervention yet again." *Id.*

[6] Alexis's reliance on an unpublished Fifth Circuit opinion is also of no help. *United States v. Jimenez-Ibarra,* 695 F. App'x 767, 771 (5th Cir. 2017) (noting that "it is at least subject to reasonable dispute whether there is a 'realistic probability' that Texas would apply its statute to individuals charged with possession with intent to deliver position isomers of cocaine"). In light of our en banc decision in *Castillo-Rivera,* we likewise cannot rely on the

argues," Alexis has not shown a "realistic probability" that the statute criminalizes a broader range of conduct than the federal generic definition for cocaine. *See Castillo-Rivera,* 853 F.3d at 222. We do not hold that Texas's statute, as a matter of law, categorically matches the Federal Schedule's definition of "cocaine"; we simply hold that Alexis has not shown that it does not. *See United States v. Espinoza-Bazaldua,* 711 F. App'x 737, 746 (5th Cir. 2017). Accordingly, we find that the DHS has met its burden of establishing Alexis's removability based on his Texas conviction for cocaine possession.

### B. Whether Alexis has demonstrated error in the BIA's denial of his applications for asylum and withholding of removal and protection under CAT.

Alexis also challenges the BIA's denial of his applications for asylum and withholding of removal based on his membership in three PSGs—children unable to leave a family relationship; relatives with gang member cousins; and people living in Trinidad and Tobago with mental illness displaying psychotic features. An applicant for asylum must demonstrate that he "is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A). Persecution is extreme and requires more than discrimination, harassment, or threats unaccompanied by physical harm. *Eduard v. Ashcroft,* 379 F.3d 182, 187 n.4, 188 (5th Cir. 2004). A petitioner requesting withholding of removal must make a similar showing but shoulders a greater burden: he must demonstrate a "clear probability" of persecution on account of one of the five protected grounds if he returns to his home country. *Revencu v. Sessions,* 895 F.3d 396, 402 (5th Cir. 2018). The "clear probability" standard requires more

---

reasoning of the Eleventh and Ninth Circuits. *See United States v. Phifer*, 909 F.3d 372, 375 (11th Cir. 2018); *Lorenzo v. Whitaker*, 752 F. App'x 482, 485 (9th Cir. 2019).

certainty than "a well-founded fear"; it means that persecution upon return is "more likely than not." *Id.*

As a threshold matter, 8 U.S.C. § 1252(a)(2)(C) instructs that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title." And Alexis was removed on account of his controlled substance offense under § 1227(a)(2)(B).     However, "§ 1252(a)(2)(D) preserves our jurisdiction for constitutional claims and questions of law" that Alexis raises. *Luna-Garcia De Garcia v. Barr*, 921 F.3d 559, 563 (5th Cir. 2019).  The Supreme Court recently clarified that we have jurisdiction to consider mixed questions of law and fact, holding that "the application of law to undisputed or established facts is a 'questio[n] of law' within the meaning of §1252(a)(2)(D)." *Guerrero-Lasprilla v. Barr,* 589 U.S. ——, ——, 140 S.Ct. 1062, 206 L. Ed. 2d 271, No. 18-776, 2020 WL 1325822, slip op. at 3-5 (Mar. 23, 2020).  Accordingly, we may review the application of legal standards for asylum, withholding of removal, or protection under CAT to the settled, undisputed facts in Alexis's case.  *Id.* "When reviewing a BIA decision, questions of law are reviewed de novo[.]" *Vazquez*, 885 F.3d at 870 (internal citation omitted).

Alexis's claims for relief on appeal, that the BIA improperly applied the nexus and PSG's requirements to his alleged groups, are unreviewable because they rest on disputed or unestablished facts.  With respect to the PSG of "children unable to leave a family relationship," the BIA affirmed the IJ's finding that "the record does not support a finding that [Alexis's father] targeted [Alexis] because of the familial relationship" but rather the claim concerned a "personal, private conflict with a particularly violent individual." Regarding the PSG of "people living in Trinidad and Tobago with mental illness displaying psychotic features," the BIA affirmed the IJ's finding that

Alexis failed to "establish a nexus" between his fear and membership within this broad group consisting of "people with a wide array of mental health conditions living in a variety of contexts in Trinidad and Tobago." Alexis also conceded that he was never harmed on account of his mental illness or his father's violent behavior during the 26 months Alexis spent in Trinidad and Tobago after a 2009 deportation. Finally, as to the PSG of "family members of Alexis's gang member cousins," the BIA affirmed the IJ's conclusion that Alexis "did not submit sufficient evidence to establish that the general society in Trinidad and Tobago considers family members to his two cousins to be a group." Alexis also conceded that his gang member cousins have been arrested and would likely be jailed for life.

Because withholding of removal has more stringent requirements than asylum, the BIA correctly determined that Alexis was similarly not eligible for withholding of removal. *Orellana-Monson v. Holder,* 685 F.3d 511 (5th Cir. 2012) (noting that "eligibility for withholding of removal was foreclosed by [petitioner's] ineligibility for asylum based on lack of membership in particular social group"). Therefore, Alexis has failed to demonstrate a legal or constitutional error in the BIA's decision denying his asylum and withholding of removal applications.

Next, we turn to Alexis's claim brought under the CAT, which requires "proof of torture, not simply persecution." *Chen v. Gonzales,* 470 F.3d 1131, 1139 (5th Cir. 2006). "[A]pplicants seeking relief under the [CAT] must satisfy a more rigorous standard than that for asylum." *Id.* An applicant for has the burden of demonstrating "that it is *more likely than not* that he or she would be tortured if removed to the proposed country of removal." *Id.* (emphasis added). Alexis's claim for protection under CAT is also unreviewable because it rests on disputed or unestablished facts. *See Guerrero-Lasprilla,* 589 U.S. at ——. The BIA affirmed the IJ's determination that "evidence relating to

circumstances" of the "worst incidents of [Alexis's] harm" at the hands of police was "unclear" in light of Alexis's prior drug offense in Trinidad and Tobago. Moreover, the BIA affirmed the IJ's finding that there was "no evidence in this case that authorities in Trinidad and Tobago intentionally create and maintain [inhumane] conditions in order to inflict torture." With respect to violence experienced at the hands of Alexis's gang member cousins, the BIA affirmed the IJ's finding that Alexis conceded that his cousins were arrested and would likely be jailed for life and that Alexis lacked evidence demonstrating that the government of Trinidad and Tobago would acquiesce and consent to any torture by his cousins. Accordingly, Alexis has failed to demonstrate a legal or constitutional error in the BIA's decision denying protection under CAT.[7]

## IV. CONCLUSION

For these reasons, we DENY Alexis's petition for review of his final order of removal and DISMISS for lack of jurisdiction Alexis's petition for review of his eligibility for relief and protection.

---

[7] Alexis also argues, for the first time in his reply brief, that the BIA's "failure to consider all evidence [related to an applicant's claim of torture] is also a constitutional issue as it violates an alien's fundamental right to a full and fair hearing." We decline to consider this untimely argument because Alexis is not responding to a new issue raised in the government's response brief. *See United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009).

No. 18-60748

JAMES E. GRAVES, JR., Circuit Judge, concurring:

I write separately because although the majority opinion is controlled by our precedent in *United States v. Castillo-Rivera,* 853 F.3d 218, 222 (5th Cir. 2017) (en banc), the realistic probability test and "actual case" requirement are simply illogical and unfair in the context of Alexis's petition for review of his final order of removal.

*Castillo-Rivera* relies on the "actual case" language from *Moncrieffe v. Holder,* 569 U.S. 184, 189 (2013) and *Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007) ("But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."). However, the Second Circuit has pointed out that "*Duenas-Alvarez* does not require the BIA to conduct a separate realistic probability test in a case" where the statutory elements of a state offense alone are broader than the corresponding federal offense. *Hylton v. Sessions*, 897 F.3d 57, 64 (2d Cir. 2018). "*Duenas-Alvarez* dealt with a specific aiding-and-abetting theft statute, in which the *boundaries of the offense conduct were ill-defined* and the court was tasked with an *interpretive dilemma.*" *Id.* (emphasis added). Thus, the need for an actual case to satisfy the realistic probability test arises when the petitioner must "conjure up scenarios that lurk in the indeterminacy of statutory wording." *Id.* Alexis's challenge to the competing definitions of "cocaine" does not conjure the same indeterminacy—it is facially clear from the statutory text that Texas's definition of cocaine contains "position isomers of cocaine" and the federal definition does not.

Even after the decisions in *Moncrieffe* and *Duenas-Alvarez*, the Supreme Court itself did not impose an actual case requirement or the realistic probability test in *at least two cases* challenging whether state convictions trigger federal consequences. In *Mellouli v. Lynch*, the Supreme Court held that petitioner's Kansas conviction for concealing unnamed orange pills in his

15

sock did not trigger removal under § 1227(a)(2)(B)(i).  575 U.S. 798, 135 S. Ct. 1980 (2015).  The Court stated "[a]t the time of Mellouli's conviction, Kansas' schedules included at least nine [controlled] substances not included in the federal lists" and went on to explain that "[t]he historical background of § 1227(a)(2)(B)(i) demonstrates that Congress and the BIA have long required a direct link between an alien's crime of conviction and a particular federally controlled drug."  *Id.* at 1984.  The Court did not mention the realistic probability test or require the petitioner to cite a Kansas case prosecuting one of the nine controlled substances not included on the Federal Schedule.  In fact, the Court found that petitioner's state conviction did not trigger removal under § 1227(a)(2)(B)(i) based on the statutory comparisons alone, indicating that the Court did not consider the realistic probability necessary.  *Id.* at 1990-91 ("We therefore reject the argument that *any* drug offense renders an alien removable, without regard to the appearance of the drug on a § 802 schedule.") (emphasis in original).  Similarly, in *Mathis v. United States,* 136 S. Ct. 2243 (2016), the Supreme Court considered whether Iowa's burglary statute "cover[ed] a greater swath of conduct than the elements of the relevant ACCA offense (generic burglary)."  The Court did not apply or even mention the realistic probability test but instead it found that the statute at issue listed alternative means and that some of those means did not satisfy the ACCA's generic burglary definition.  *Id.* at 2250.  "Under [the Court's] precedents, that undisputed disparity [of alternative means] resolve[d] this case."  *Id.* at 2251. Although decided after *Mellouli* and *Mathis*, the *Castillo-Rivera* majority opinion made no mention of these Supreme Court decisions finding the realistic probability test an unnecessary rule in every case. *Castillo-Rivera*, 853 F.3d at 223 (citing *Duenas-Alvarez,* 549 U.S. at 193).

The Supreme Court clearly finds the realistic probability test unnecessary in certain instances, and in fact, other circuit courts have pointed

No. 18-60748

out *Castillo-Rivera*'s misstep. In fact, we diverge from at least seven[1] other circuit courts. These courts "have also held that the 'realistic probability'

---

[1]The Third Circuit collected cases to demonstrate that the Fifth Circuit is alone in its unwavering application of the "realistic probability" test:

*Hylton v. Sessions*, 897 F.3d 57, 64 (2d Cir. 2018) (evaluating whether a state conviction for sale of marijuana in the third degree constituted an INA aggravated felony, and concluding that "[b]y demanding that Hylton produce old state cases to illustrate what the statute makes punishable by its text, the Government's argument misses the point of the categorical approach and wrenches the Supreme Court's language in Duenas Alvarez from its context" (internal quotation marks and citations omitted)); *United States v. Titties*, 852 F.3d 1257, 1274-75 (10th Cir. 2017) (determining applicability of Armed Career Criminal Act ("ACCA") sentencing enhancement based on prior convictions, and concluding, in spite of Government's contention that a "realistic probability" inquiry was necessary, that "[t]his is not a case where we need to imagine hypothetical non-violent facts to take a statute outside of the ACCA's ambit. . . The Government gives no persuasive reason why we should ignore [the statute's] plain language to pretend [it] is narrower than it is."); *Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) ("[Duenas-Alvarez's] sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes has no relevance to a case like this [where the state law at issue unambiguously covered one drug not on the federal schedules, as relevant for removal eligibility under the INA]. The state crime at issue clearly does apply more broadly than the federally defined offense."); *United States v. Aparicio-Soria*, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc) (rejecting Government's argument that a "realistic probability" inquiry is necessary because "this case does not require an exercise of imagination, merely mundane legal research skills: we have precedent from Maryland's highest court" confirming that the state offense of resisting arrest captures conduct outside the scope of "crimes of violence" under the United States Sentencing Guidelines); *Ramos v. Att'y Gen.*, 709 F.3d 1066, 1071-72 (11th Cir. 2013) (examining whether a state theft conviction qualified as an aggravated felony rendering an alien removable under the INA and observing that "Duenas-Alvarez does not require [a realistic probability] showing when the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition."); *United States v. Grisel,* 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (evaluating whether Oregon second-degree burglary conviction fell under the ACCA's "violent felony" mandatory minimum, and noting "[w]here, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." (internal citation omitted)). *But see United States v. Castillo-Rivera,* 853 F.3d 218, 222, 239 (5th Cir. 2017) (en banc) (applying the "realistic probability" test

17

inquiry is unnecessary where the elements of the offenses do not match." *Zhi Fei Liao*, 910 F.3d at 723 n.11. Where "the elements of the crime of conviction are not the same as the elements of the generic federal offense, . . . the realistic probability language (or, the realistic probability inquiry) of *Moncrieffe* is simply not meant to apply." *Salmoran v. Attorney Gen. United States*, 909 F.3d 73, 81 (3d Cir. 2018) (internal quotations and citations omitted). As evidenced by Alexis's challenge, our rigid approach to the realistic probability test "plac[es] an undue burden on petitioners" to identify "cases of actual prosecution where the statute expressly authorizes the state government to enforce broader conduct." *Id.* at 82.

Moreover, this *undue burden* is especially heightened in the context of removability where the government "has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable." 8 U.S.C. § 1229a(c)(3)(A). *Castillo-Rivera*'s actual case requirement shifts the government's burden of establishing deportability onto the petitioner. For example, in *Lorenzo v. Whitaker*, 752 F. App'x 482, 483 (9th Cir. 2019), the immigrant petitioner successfully demonstrated the definition of "methamphetamine" applicable to convictions under California Health & Safety Code §§ 11378 and 11379(a) was broader than the definition of methamphetamine under the federal Controlled

---

to hold that a Texas conviction for unlawful possession of a firearm constituted an aggravated felony for sentencing purposes, even though it would, as the dissent explained, "require a defendant to disprove the inclusion of a statutory element that the statute plainly does not contain").

*Zhi Fei Liao v. Attorney Gen. United States of Am.*, 910 F.3d 714, 723 n.11 (3d Cir. 2018). Arguably, the Sixth Circuit has intimated in an unpublished opinion that although a defendant should point to his own case or other cases "in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues," "we do not need to abandon the plain meaning of the statute." *United States v. Lara,* 590 F. App'x 574, 584 (6th Cir. 2014).

Substances Act, 21 U.S.C. § 812.  The Ninth Circuit found it was evident from the statutory language alone that "the California definition includes both optical and geometric isomers of methamphetamine, whereas the federal definition includes only optical isomers of methamphetamine." *Id.* at 485.  The government in *Lorenzo* argued "the facial overbreadth in California law is of no significance because geometric isomers of methamphetamine do not in fact exist." *Id.*  However, the Ninth Circuit declined to consider the argument of whether "geometric isomers of methamphetamine exist" because the government only raised it for the first time in the petition for rehearing. Nonetheless, this case illustrates the sound rationale that the government should ultimately demonstrate the nonexistence of "geometric isomers of methamphetamine" and the harmlessness of the statutory mismatch because the government has the burden of proving that the petitioner is "deportable." 8 U.S.C. § 1229a(c)(3)(A).  *Castillo-Rivera* would instead hold that the petitioner must prove California's prosecution of possession of geometric isomers of methamphetamine, which the government ultimately argued do not even exist.  Satisfying the realistic probability test would be impossible for the petitioner and in turn would minimize the government's ultimate burden to demonstrate deportability.  *See* 8 U.S.C. § 1229a(c)(3)(A).

Perhaps one day we will revisit *Castillo-Rivera* to address the dilemma that petitioners like Alexis find themselves in or perhaps the Supreme Court can resolve the circuit split and add clarity in light of its decisions in *Mellouli* and *Mathis.*

No. 18-60748

JAMES L. DENNIS, Circuit Judge, dissenting:

Under 8 U.S.C. § 1227(a)(2)(B)(i), a resident alien is removable after being convicted of an offense "relating to a controlled substance (as defined in section 802 of Title 21)" of the U.S. Code. Petitioner Richard Alexis was ordered removed under this provision based on his Texas conviction for possessing cocaine. When determining whether a state law conviction renders an alien eligible for removal, we do not look to the actual conduct that led to alien's conviction; instead, we consider the state law as a whole and whether it establishes a crime that inherently meets the federal definition of a controlled-substance-related offense. *Mellouli v. Lynch,* 135 S. Ct. 1980, 1986 (2015). If it does not, we then ask whether there is a "realistic probability" that Texas would prosecute violations of the statute that would not fit the federal definition. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

Here, it is undisputed that Texas's definition of cocaine is facially broader than the federal definition contained in section 802 because Texas defines the term to include the drug's "position isomers," which are not considered cocaine under federal law. *Compare* Tex. Health & Safety Code § 481.102(3)(D) (defining "cocaine" to include "its salts, its optical, *position*, and geometric isomers, and the salts of those isomers" (emphasis added)) *with* 21 U.S.C. § 812(c), Schedule II(a)(4) (listing as a federally controlled substance "cocaine, its salts, optical and geometric isomers, and salts of isomers" and not including cocaine position isomers) *and* 21 U.S.C. § 802(14) (specifying that, with reference to cocaine, "the term 'isomer' means any optical or geometric isomer" and not position isomers).[1] Thus, so long as Alexis can establish a

---

[1] That cocaine position isomers were intentionally omitted from the federal schedules is evidenced by the statute's handling of other controlled substance isomers. For all other federally controlled substances, the statutory term "isomer" encompasses only "the optical isomer," with the exception of a list of enumerated Schedule I "hallucinogens," for which "the term 'isomer' means any optical, *positional*, or geometric isomer." 21 U.S.C. §

realistic probability that Texas would prosecute individuals under the state statute for possessing position isomers of cocaine, his conviction will not qualify as a conviction "relating to a controlled substance (as defined in section 802 of Title 21)," and he therefore will not be subject to removal. *See Vazquez v. Sessions*, 885 F.3d 862, 870-71 (5th Cir.).

The majority concludes that, under *United States v. Castillo-Rivera,* 853 F.3d 218, 222 (5th Cir. 2017) (en banc), Alexis can meet this burden only by pointing to a case in which Texas explicitly prosecuted an individual for possessing a position isomer of cocaine—a task that the majority concedes is virtually impossible given that Texas does not require that the specific salt or isomer of cocaine be alleged in an indictment or proven at trial. Majority at 9-10 (quoting Michael B. Charlton, TEX. PRAC., TEXAS CRIMINAL LAW, *Controlled Substances* § 30.1 (2019)). Petitioners like Alexis will likely never be able to produce court records showing that Texas prosecutes individuals for possessing cocaine position isomers because such records will almost invariably simply refer to cocaine position isomers as "cocaine"—the same term Texas uses to describe various substances that do meet the federal definition. I believe we should interpret *Castillo-Rivera* more narrowly and realistically to avoid creating such an unreasonable and insurmountable hurdle.[2]

*Castillo-Rivera* does not require that a petitioner identify a case in which the state explicitly prosecuted an individual for conduct that is not prohibited under the corresponding federal law. Were that the rule, a petitioner would not have to establish only "a *realistic probability* . . . that the

---

802(14) (emphasis added); 21 U.S.C. § 812(c), Schedule I(c). Federal lawmakers clearly knew how to include the position isomers of a substance in the federal schedules when they wished to do so but chose not to include cocaine position isomers.

[2] Although we are bound to apply its reasoning, I continue to believe *Castillo-Rivera* itself was incorrectly decided. *See Castillo-Rivera*, 853 F.3d at 237-43 (Dennis, J., dissenting).

State would apply its statute to conduct that falls outside the generic definition of the crime," *Castillo-Rivera*, 853 F.3d at 222 (emphasis added) (quoting *Duenas-Alvarez*, 549 U.S.at 193, but rather an absolute certainty that the State has done so.  Instead, *Castillo-Rivera* states that a petitioner must "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) *manner* for which he argues."  *Id.* (some emphasis omitted) (quoting *Duenas-Alvarez*, 549 U.S. at 193.)  That is, the petitioner must identify a case in which the state applied the prohibition *in a different way* than the federal government applies its corresponding law and show that that application has the realistic potential to reach conduct not covered by the federal statute.

Here, Alexis points to a case showing that Texas aggregates the weight of all different forms of "cocaine" that a suspect is accused of possessing without regard to whether any of those substances are cocaine position isomers.  *See Evans v. State*, 202 S.W.3d 158, 160 (Tex. Crim. App. 2006) (upholding a defendant's conviction that was based on the aggregate weight of what would appear to be different forms of cocaine without distinguishing based on their chemical makeup).  This is a "special (nongeneric) manner" of applying the term "cocaine," *Castillo-Rivera,* 853 F.3d at 222, because it is different from the approach taken under federal law.  Under the federal statute, any position isomers of cocaine that were present and not mixed with other cocaine would have been excluded from the aggregation because they would not be considered cocaine.  *See* 21 U.S.C. § 802(14).  By not doing the same, the Texas court applied its statute in a nongeneric way that is likely to reach conduct not covered by the federal statute.

A "realistic probability" is not an absolute certainty.  *Cf. United States v. Rodriguez*, 360 F.3d 949, 957 (9th Cir. 2004) (collecting cases disclaiming a need for certainty in commerce clause analysis when only a

realistic probability is required).    Thus, Alexis should not be required to identify a case proving that Texas has definitely prosecuted an individual for possession of cocaine position isomers.  As I said, such definitive proof likely would not exist regardless of how often such prosecutions occur.  Rather, a showing that Texas applies the statute in a "special (nongeneric) manner," *Castillo-Rivera,* 853 F.3d at 222, that may reach cocaine position isomers should be sufficient.  Because Alexis offered a case demonstrating that Texas does not specifically exclude position isomers when it aggregates the weight of different forms of cocaine in its prosecutions, I would hold that he has met this burden and grant his petition.[3]  Accordingly, I respectfully dissent.

---

[3] Because demonstrating that he was not convicted of a removable offense is sufficient grounds to grant Alexis's petition and vacate his removal order, I would not reach his alternate arguments regarding asylum, withholding of removal, or protection under the Convention Against Torture.